[L. A. No. 18019.   In Bank.   Nov. 25, 1941.]

MILLER K. F. HINDS, Petitioner, v. THE STATE BAR
OF CALIFORNIA, Respondent.

Miller K. F. Hinds, *in pro. per.*, for Petitioner.

W. Eugene Craven for Respondent.

THE COURT.—This is a proceeding to review the record
in disciplinary proceedings initiated by The State Bar of
California, pursuant to service on petitioner, an attorney at
law, of a notice to show cause why he should not be disci-
plined for asserted professional misconduct.

The notice to show cause charged petitioner with having committed acts "involving moral turpitude" and with having violated his oath and duties as an attorney at law within the meaning of sections 6103 and 6106 of the Business and Professions Code, the specific charge being that without the knowledge or consent of his client he altered a deed in which she was named as grantee.

Following the hearings on such charges the local examining committee of The State Bar found petitioner guilty and recommended that he be given a public reprimand. After the matter had been transferred to the Board of Bar Governors that body adopted the findings of the local examining committee, and recommended that petitioner be suspended from the practice of the law for a period of six months.

The findings made by the local examining committee, and adopted by the Board of Bar Governors, were substantially as follows:

"That on March 29, 1940, respondent [petitioner] was the attorney for Sue S. Blankenship and . . . was representing her in an action for divorce against her husband John R. Blankenship . . . "; that "as attorney for Mrs. Blankenship, and in connection with a property settlement agreement between the parties to said action, respondent prepared a quitclaim deed covering certain real and personal property by the terms of which Mr. Blankenship quitclaimed all of his interest in said property to Mrs. Blankenship"; that "on March 29, 1940, in the presence of Mrs. Blankenship and respondent, Mr. Blankenship signed said quitclaim deed"; that "thereupon and while acting as Mrs. Blankenship's attorney," and on the understanding that he do so, respondent (who was a notary public) took the deed to his office for the purpose of completing the notarial acknowledgment and of recording the deed; that "while said deed was in the possession of respondent he inserted, or caused to be inserted, in said quitclaim deed the name of his daughter, Mary J. Grady, as a grantee, for the purpose of securing his attorney's fees in said divorce action"; that "the insertion by respondent of the name of Mary J. Grady as a grantee was done without the authority and without the knowledge of Mrs. Blankenship"; that "on April 5, 1940, respondent, at the request of his client, Mrs. Blankenship, caused said deed to be recorded without informing Mrs.

Blankenship that he had inserted the name of his daughter as a grantee in said deed''; that ''thereafter Mrs. Blankenship entered into negotiations for the sale of the property described in'' the deed, and in connection with the proposed sale she opened an escrow in a bank; that ''under date of April 9, 1940, respondent addressed a letter to said bank enclosing a quitclaim deed from Mary J. Grady and W. C. Grady, wife and husband, covering the real and personal property described in the original quitclaim deed from Mr. Blankenship to Mrs. Blankenship'' in which he ''instructed said bank that it was authorized to use . . . [the] quitclaim deed from Mary J. Grady and her husband to Mrs. Blankenship only on condition that'' the bank ''collect from said escrow on respondent's behalf the sum of $90.50.'' Parenthetically, it may here be said that Mrs. Blankenship did not become aware of the fact that the deed had been altered until the escrow proceedings disclosed such fact.

█ There is sufficient evidence in the record to support the foregoing findings and, therefore, the charges should be sustained, unless, in accordance with petitioner's contention, it can be said that at the time he altered the deed there were in existence facts and circumstances sufficient to excuse his conduct in that regard.

From the record it appears that when the divorce proceedings were instituted it was agreed between Mrs. Blankenship and petitioner that his fee would be $150. At the time of such agreement, however, and in connection with the divorce action, petitioner prepared an affidavit for an order to show cause with respect to the payment of alimony, attorney's fees, etc., which affidavit Mrs. Blankenship signed and acknowledged before petitioner. In such affidavit it was averred that no arrangement had been made for the payment of attorney's fees and that affiant had no separate property. On March 29, 1940, at the hearing on the order to show cause in the divorce action the court ordered the defendant husband to pay alimony in a stated amount and attorney's fees in the sum of $100. The defendant was not present at such hearing but was in another department of the superior court in response to judicial process. The record shows, however, that copies of the orders made at the hearing on the order to show cause were served on John Blankenship on March 29, 1940, at the McCracken Home at Wilmar, Cali-

fornia, where he was then staying, and it was later in the evening of that day that he executed in favor of his wife the quitclaim deed which was subsequently altered by petitioner. The record also shows that on April 1, 1940, Mrs. Blankenship made a payment to petitioner in the sum of $60, to be credited toward the attorney's fees in the divorce action.

Although petitioner admitted having altered the deed on April 5, 1940, by the inclusion of the name of his daughter as co-grantee, for the express purpose of securing the balance of his attorney's fee, he contended the deed had been delivered to him as the agent of Blankenship, the grantor, by whom he had been instructed not to deliver the deed to Mrs. Blankenship until she had paid the attorney's fees and executed a property settlement agreement incorporating a release of the grantor from each of the court orders made at the hearing on the order to show cause. In that connection petitioner asserts that immediately after the court issued the orders with respect to attorney's fees and alimony he became aware of certain acts of fraud which he contends Mrs. Blankenship had committed and intended to commit to the detriment of Blankenship. According to petitioner, such asserted acts of fraud consisted of Mrs. Blankenship's alleged false statement in her affidavit in support of the order to show cause that she had no separate property and of a statement which she assertedly made to petitioner immediately after the court orders had been made, to the effect that she intended both to secure the quitclaim deed from her husband and to refuse to release him from carrying out the court orders with regard to alimony payments and attorney's fees. Petitioner testified that, under the circumstances, he conceived it to be his duty to inform Blankenship of such asserted fraudulent acts and proposed fraudulent acts and, therefore, on the afternoon of March 29, 1940, without the knowledge of Mrs. Blankenship, he interviewed Blankenship at the McCracken Home and apprised him of his wife's alleged deception in the respects mentioned; and that at such time and place Blankenship executed a quitclaim deed to the property heretofore mentioned (which deed petitioner assertedly had prepared prior thereto), in which Mrs. Blankenship and Mary J. Grady were named as co-grantees— the interest of the latter having been described in the deed as a mortgage to secure the payment of petitioner's fee as

Mrs. Blankenship's attorney. Petitioner further testified that he took possession of such deed for the purpose of completing the notarial acknowledgment, and retained it in his office together with the deed which Blankenship executed in the evening of the same day in the presence of petitioner and Mrs. Blankenship, wherein the latter alone was named as grantee; that thereafter, and on April 5, 1940, Blankenship came to his office and in the presence of the witness Simmons, detached his signature from the deed in which Mary J. Grady was named as co-grantee, but at the same time and place gave petitioner permission to alter the deed in which Mrs. Blankenship had been named as sole grantee, to include the name of Mary J. Grady as a co-grantee; also that on such occasion, with the approval of Blankenship, petitioner issued a receipt or memorandum in triplicate in which it was recited that the name of Mary J. Grady as co-grantee had been added to the deed last mentioned as security for the payment of his attorney's fees. Petitioner produced evidence, particularly that given by the witness Simmons, which, if believed, would tend to substantiate petitioner's statement with regard to what assertedly had occurred in his office on April 5. However, Blankenship's testimony in that respect was to the contrary. He maintained that petitioner had not visited him at the McCracken Home on the afternoon of March 29, 1940; that he had neither signed a deed in which the name of Mary J. Grady had appeared as a grantee, nor had he at any time authorized petitioner to alter the deed which he had executed in favor of his wife on the evening of March 29; furthermore, that he had not instructed petitioner, as his agent, to withhold delivery of such deed to Mrs. Blankenship until she had complied with any named condition.

It is clear that the matters and circumstances related by petitioner as alleged justification of his action in altering the deed, even though true, would not operate to absolve him from the charge of having violated his duty of fidelity to his client. He admitted he was not acting as the legal representative of anyone other than Mrs. Blankenship and, in effect, conceded the impropriety of any act on his part which would have placed him in the position of having attempted to represent both his client and her adversary in the pending court action. Moreover, in connection with the matters and cir-

cumstances related by petitioner as alleged justification of his conduct, several discrepancies and inconsistencies are readily apparent. Not only did Mrs. Blankenship deny having stated to petitioner, after the court orders had been made, that she intended to secure the quitclaim deed from her husband and also compel him to pay alimony and her attorney's fees, but, as heretofore related, the record shows that a day or so after she assertedly made such statement she voluntarily paid petitioner the sum of $60 on account of his fee. And, besides the fact that Blankenship denied he had ever executed a quitclaim deed in which Mary J. Grady was named as a co-grantee, even if it be assumed that, for the reasons implied by petitioner, Blankenship did execute such a deed on the afternoon of March 29, no logical reason is apparent why he should have executed another quitclaim deed to his wife in the evening of that day—in view of the fact that at the time he executed the later deed he was fully aware of the import of the court orders and, so far as the record shows, he was under no legal compulsion to execute such a deed in favor of his wife. Furthermore, when questioned with regard to the incidents which he asserted took place immediately prior to his alteration of the deed, petitioner advanced no reasonable explanation for Blankenship's action in detaching his signature from the alleged deed in which Mary J. Grady had purportedly been named as a co-grantee—while at the same time authorizing petitioner to place her name as a co-grantee in the deed which Blankenship had executed in the presence of petitioner and Mrs. Blankenship, in which the latter was named as sole grantee.

Sufficient has been said herein to illustrate the unreliability of much of the evidence presented by petitioner in alleged defense of his action in altering the deed without his client's knowledge or consent. Moreover, as heretofore indicated, even had the circumstances relied on been as related by him, they were insufficient to constitute a legal excuse for his conduct—which points to the conclusion that in his zeal to insure the collection of his fee he assumed a position inimical to the interests of his client.

Had petitioner in good faith become convinced that his client intended to secure an unwarranted advantage over her husband which as her legal advisor he would have been unable to dissuade her from exercising, he could have with-

drawn as her counsel. Likewise, had he believed that she had intentionally or otherwise perpetrated a fraud on the court by reason of the false statements made in her affidavit for the order to show cause—in the preparation of which it appears he aided—it became his duty to divulge such fact to the court which had issued the orders.

There is no merit in petitioner's contention that the State Bar Act is unconstitutional for the asserted reason that it is an attempt by the legislature to delegate judicial powers to the Board of Governors of The State Bar. (*In re Shattuck,* 208 Cal. 6 [279 Pac. 998]; *Brydonjack* v. *State Bar,* 208 Cal. 439, 445 [281 Pac. 1018, 66 A. L. R. 1507]; *Carpenter* v. *State Bar,* 211 Cal. 358 [295 Pac. 23]; *In re Richardson,* 209 Cal. 492, 498 [288 Pac. 669]; 9 Cal. Jur. 10-Year Supp. 341.) Nor can petitioner's claim be sustained that the charges against him should be dismissed for the reason that the complaint, or order to show cause, was not verified. (*Herron* v. *State Bar,* 212 Cal. 196 [298 Pac. 474]; *Bruns* v. *State Bar,* 213 Cal. 151 [1 Pac. (2d) 989]; *Golden* v. *State Bar,* 213 Cal. 237 [2 Pac. (2d) 325]; *Schaffer* v. *State Bar,* 212 Cal. 367, 368 [298 Pac. 994]; 9 Cal. Jur. 10-Year Supp. 460.)

In accordance with the views hereinbefore expressed, it is ordered that petitioner be and he hereby is suspended from the practice of law in this state for the period of six months, effective thirty days after the filing of this decision.