[S. F. No. 16835.   In Bank.   Mar. 15, 1943.]

THOMAS R. McGRATH, Petitioner, v. THE STATE BAR
OF CALIFORNIA, Respondent.

Thomas R. McGrath, in pro. per., for Petitioner.

George W. Wilson and Jerold E. Weil for Respondent.

THE COURT.—By an order to show cause issued on November 24, 1941, petitioner was charged with professional misconduct. A hearing was scheduled before a local administrative committee of The State Bar on February 3, 1942, and the complaining witnesses, Edna Darambouro and her son-in-law, Dave Greenblat, were subpoenaed to appear. Because of their late arrival at the first hearing they could not be heard. Two continuances were ordered by the committee to enable them to testify, but they failed each time to appear. Petitioner, however, appeared and testified, and upon his stipulation that the appearance of the complaining witnesses was not necessary to establish his defense, the examiner's request for another continuance was denied and the matter was ordered submitted on March 12, 1942.

The committee made the following findings of fact: Petitioner was employed and paid the sum of $40 by Edna Darambouro to recover possession of real property that she had purchased in May, 1934, from the estate of William F. Hogan, deceased. He filed suit against Marcelle H. Sheldon, the occupant, in September, 1934, but abandoned the action when he learned that R. L. Husted, attorney for the administrator of the Estate of Hogan, had previously instituted a similar action on behalf of petitioner's client and that judgment had been entered in her favor for possession of the property and for damages for unlawful withholding on October 2, 1934. Husted caused a writ of possession to be issued and execution to be levied against moneys due the judgment debtor as heir of the Estate of Hogan. On November 5, 1934, Patricia Sheldon, the judgment debtor's daughter, filed a third party claim against the funds held by the sheriff as a result of the execution. On November 13, 1934, petitioner was substituted for Husted as attorney for Edna Darambouro. On October 9, 1935, the sheriff issued and delivered to petitioner a check for $395.76, representing the proceeds of the levy of execution. Petitioner did not report the collection of the judgment to his client. He cashed the check and from the proceeds paid $60 to the attorney for Marcelle H. Sheldon to reimburse the judgment debtor for an over-execution in that amount. He also paid $100 to the attorney for the third

party claimant in settlement of her claim. The third party claim had already been denied, without petitioner's knowledge, by a court order under date of September 30, 1935, and it is uncertain whether Edna Darambouro agreed to the settlement of the claim. On October 17, 1935, petitioner paid $31.17 to Husted as reimbursement for costs advanced by the latter for Edna Darambouro. Petitioner retained the balance of the judgment, $204.59, despite his client's demands for its remittance. He commingled the balance of the proceeds of the judgment with his own funds and expended it for his own use and benefit. Although he had no agreement with his client fixing the amount of compensation for his services, and although he did not submit a bill for his services, he retained the money as a means of bargaining with his client for the settlement of his claim for legal fees. His offer to remit $100 and retain $104.59 was rejected. He also performed other legal services for the Darambouro family without any agreement by Edna Darambouro to compensate him therefor. These services were rendered in the hope that the family would be induced thereby to concede his claim to the balance of the proceeds of the judgment in excess of $100.

The committee concluded that in failing to report to his client the collection of the judgment and in commingling the balance thereof with his own funds, petitioner violated rule 9 of the Rules of Professional Conduct of the State Bar, and that in failing to remit the balance and in expending it for his own use and benefit, he violated his oath and duties as an attorney within the meaning of section 6103 of the Business and Professions Code, and committed acts involving moral turpitude, dishonesty and corruption within the meaning of section 6106. It recommended that petitioner be suspended for a period of three months. The Board of Governors adopted the committee's findings of fact but recommended that petitioner be suspended for a period of two years. In fixing the degree of discipline, it took into consideration petitioner's past record, which consisted of a public reproval administered by the Board of Governors on June 21, 1940, for the retention of the sum of $10 advanced by a client for the filing of a suit which petitioner failed to file.

There is no merit in petitioner's contention that the Board of Governors erred in failing to comply with the provisions of sections 289, 290, and 291 of the Code of Civil Procedure. Those sections were repealed in 1939 and re-

enacted as sections 6107 and 6108 of article 6, chapter IV, of the Business and Professions Code. Article 6 deals with the disciplinary authority of courts, and sections 6107 and 6108 require a written and verified accusation when proceedings are taken by the court upon the information of another. It is well settled, however, that the procedure of investigation preliminary to a hearing by the Board of Governors under the authority of article 5, dealing with the disciplinary authority of the Board of Governors, occupies the same field held by the written and verified accusations under the system provided for in the code sections. (*Hinds* v. *State Bar*, 19 Cal.2d 87 [119 P.2d 134]; *Golden* v. *State Bar*, 213 Cal. 237 [2 P.2d 325]; *Schaffer* v. *State Bar*, 212 Cal. 367 [298 P. 994]; *Herron* v. *State Bar*, 212 Cal. 196 [298 P. 474].) Section 6075 of article 5 accordingly provides: ''In their relation to the provisions of article 6, concerning the disciplinary authority of the courts, the provisions of this article provide a complete alternative and cumulative method of hearing and determining accusations against members of the State Bar.''

Petitioner contends, however, that the local administrative committee's findings and recommendation and the Board of Governors' recommendation are without support because the complaining witnesses did not appear or testify at the hearings before the committee. The appearance and testimony of a complaining witness is not essential in proceedings of this nature, however, for the local committee or Board of Governors may of its own motion, and without the filing or presentation of any complaint, institute and conduct disciplinary proceedings against members of the Bar.( *Geibel* v. *State Bar*, 14 Cal.2d 144 [93 P.2d 97]; *Tapley* v. *State Bar*, 8 Cal.2d 167 [64 P.2d 404].) The findings in the present case are not deprived of evidentiary support because of the failure of Edna Darambouro and Dave Greenblat to testify, for petitioner himself testified to and admitted every material fact embraced in the committee's findings. Petitioner was not prejudiced in presenting his defense by the absence of the complainants and their testimony was dispensed with only after he stipulated to that effect.

Petitioner next contends that the recommended disciplinary action is not justified because the local committee in making its recommendations recognized that ''the complaining witnesses are persons with whom professional relations would be difficult'' and that the offenses committed

by petitioner "resulted from a careless disregard . . . of his duties as an attorney, rather than from a deliberate purpose to wrong his client." The evidence, however, does not compel the conclusion that petitioner was merely negligent. On the contrary, it discloses that even though he had no agreement for compensation for his services and was aware that an attorney in this state does not have a lien on his client's funds to insure payment of his fee, he intentionally withheld his client's funds in an attempt to coerce payment of a fee. An attorney who takes advantage of his client in such a manner commits a deliberate wrong and is guilty of conduct often described as involving moral turpitude (*Rohe* v. *State Bar,* 17 Cal.2d 445 [110 P.2d 389]; *Dalzell* v. *State Bar,* 6 Cal.2d 433 [57 P.2d 1300]; *Oster* v. *State Bar,* 2 Cal.2d 625 [42 P.2d 627]) and warranting disciplinary action. (*Rohe* v. *State Bar, supra; Hinds* v. *State Bar, supra; Dalzell* v. *State Bar, supra; Mills* v. *State Bar,* 6 Cal.2d 565 [58 P.2d 1273]; *Oster* v. *State Bar, supra; Schaffer* v. *State Bar, supra; Herron* v. *State Bar, supra.*) While petitioner may not have intended to defraud his client, his motive in committing the acts charged does not constitute a defense to this proceeding.

Moreover, it was proper to consider petitioner's past record in fixing the degree of discipline. (*Bruns* v. *State Bar,* 18 Cal.2d 667 [117 P.2d 327]; *Waterman* v. *State Bar,* 8 Cal.2d 17 [63 P.2d 1133]; *Mills* v. *State Bar, supra; Marsh* v. *State Bar,* 2 Cal.2d 75 [39 P.2d 403].)

His motive and the character of his client, however, may be regarded as mitigating circumstances in determining the measure of discipline (see *Lantz* v. *State Bar,* 212 Cal. 213 [298 P. 497]; *Smith* v. *State Bar,* 211 Cal. 249 [294 P. 1057, 73 A.L.R. 393]), and petitioner's testimony on these matters is confirmed by the findings of the local administrative committee. It must be borne in mind also that he was entitled to a fee, that he performed other services for the Darambouro family without compensation, and that his actual derelictions were not grievous ones. Under the circumstances the discipline imposed by the Board of Governors is unduly severe, and that recommended by the local committee fits the offense.

It is therefore ordered that petitioner be suspended from the practice of law for a period of three months beginning thirty days after the filing of this order.