[Civ. No. 15147. Third Dist. Oct. 7, 1975.]

ACADEMY OF CALIFORNIA OPTOMETRISTS, INC.,
Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO
COUNTY, Respondent;
ROBERT M. DAMIR, Real Party in Interest.

1000

## COUNSEL

Karlton, Blease & Vanderlaan and John Metz for Petitioner.

No appearance for Respondent.

Zang, Friedman & Damir and Wilke, Fleury, Sapunor & Hoffelt for Real Party in Interest.

## OPINION

**PARAS, J.**—This case presents an issue never before decided in California: May an attorney assert a contractual "retaining lien" upon files and papers of no monetary value given to him by his client or accumulated during his employment, by which he is entitled to possession of such documents until his fee is paid? Petitioner corporation seeks a writ of mandate after the superior court refused to order its former attorney, real party in interest Robert Damir, to deliver to it such files and records.

Damir was retained by petitioner on March 2, 1970, to litigate a controversy between petitioner and California Vision Services. The retainer agreement provided for an hourly fee at "prevailing" rates, payable monthly as billed, and in the event the litigation resulted in a monetary settlement, a percentage of the recovery. The complaint was filed on January 21, 1971, in San Francisco. The defendants succeeded in changing venue to Sacramento, and extensive pleadings were filed, including a 101-page third amended complaint and lengthy memoranda of points and authorities. Substantial discovery was undertaken, including interrogatories and 38 depositions.

Apparently unhappy at what it viewed as excessive charges (Damir had been paid a total of $27,500, and claimed in addition approximately

$9,300 in fees and expenses), the petitioner's board of directors discharged Damir on April 27, 1974. However, Damir refused to sign a substitution of attorneys or turn over his files until the $9,300 balance was paid. Petitioner disputed such balance. ■ Accordingly, new counsel filed appropriate motions in superior court. The court granted the substitution, but accorded to Damir the right to retain the files pending payment of the disputed fee. The five-year mandatory dismissal period of subdivision (b) of section 583 of the Code of Civil Procedure will expire on January 21, 1976. Petitioner alleges it cannot bring the case to trial without these records.

## PROPRIETY OF MANDAMUS

Mandamus is proper to review a trial court's abuse of discretion where there is no plain, speedy and adequate remedy in the ordinary course of law. (Code Civ. Proc., § 1086.) ■ Where, as here, the facts are undisputed and the sole question is one of law, if discretion can legally be exercised in only one way, mandamus will lie to compel a correct order. (*Pacific Indem. Co.* v. *Superior Court* (1966) 246 Cal.App.2d 63, 72 [54 Cal.Rptr. 470].)

■ There is authority for the proposition that an appeal lies from an order granting an attorney a lien at the time he is substituted, as an exception to the one final judgment rule. (*Spencer* v. *Spencer* (1967) 252 Cal.App.2d 683, 690 [60 Cal.Rptr. 747].) But here the need for prompt review before expiration of five years under subdivision (b) of section 583 of the Code of Civil Procedure renders such appeal an inadequate remedy. On March 6, 1975, as a result of the trial court's ruling on that date, substituted counsel had approximately 10 months within which to bring this very complicated case to trial without having possession or use of the extensive files, documents, pleadings and discovery. An appeal by petitioner would in the ordinary course of law not be disposed of within the five years; and although there is an implied exception in subdivision (b) of section 583 of the Code of Civil Procedure for impracticability and futility (see *General Motors Corp.* v. *Superior Court* (1966) 65 Cal.2d 88, 94-96 [52 Cal.Rptr. 460, 416 P.2d 492]), there is no authority for its application in these circumstances. We therefore conclude that mandamus is the proper remedy.

## The Attorney's Retaining Lien

"Two kinds of attorneys' liens to secure expenses and fees are recognized in most jurisdictions: (1) A *general retaining* (possessory) *lien* on papers and personal property of the client coming into the attorney's possession. (2) A *specific charging* (nonpossessory) *lien* or equitable right to satisfy his expenses and fees out of the *judgment* recovered." (1 Witkin, Cal. Procedure (2d ed. 1970) Attorneys, § 78, p. 83; see also cases collected in 7 Am.Jur.2d, Attorneys at Law, §§ 272-280 and 3 A.L.R.2d 148-160; Rest. 2d Agency, § 464, subd. (b); Rest., Security, § 62, subd. (b).)

In California, a charging lien is authorized by statute in a few special situations (see 1 Witkin, Cal. Procedure (2d ed. 1970) Attorneys, § 79, p. 84), and may be freely created by contract. (*Haupt* v. *Charlie's Kosher Market* (1941) 17 Cal.2d 843, 844 [112 P.2d 627]; *Tracy* v. *Ringole* (1927) 87 Cal.App. 549, 551 [262 P. 73]; *Wagner* v. *Sariotti* (1943) 56 Cal.App.2d 693, 697 [133 P.2d 430]; *Gostin* v. *State Farm Ins. Co.* (1964) 224 Cal.App.2d 319, 323 [36 Cal.Rptr. 596]; *Gelfand, Greer, Popko & Miller* v. *Shivener* (1973) 30 Cal.App.3d 364 [105 Cal.Rptr. 445].)

■ There is no such statutory or judicial authorization for the *retaining* lien, however. Early dicta stated that no such lien existed in California. (See *Ex parte Kyle* (1850) 1 Cal. 331; *Wagner* v. *Sariotti, supra,* 56 Cal.App.2d at p. 697.) But more recent cases have declared the question still open. (*Isrin* v. *Superior Court* (1965) 63 Cal.2d 153, 157 [45 Cal.Rptr. 320, 403 P.2d 728]; *Spencer* v. *Spencer, supra,* 252 Cal.App.2d at p. 692; *Hulland* v. *State Bar* (1972) 8 Cal.3d 440, 447 [105 Cal.Rptr. 152, 503 P.2d 608].)

We need not concern ourselves with noncontractual attorneys' general retaining (possessory) and specific charging (nonpossessory) liens. ■ As above noted, such liens can be created by agreement.[1] The parties hereto executed a written retainer agreement, paragraphs 4 and 11 of which state:

"4. Counsel is hereby given a lien on any claim which gives rise to this Agreement, or to any cause of action relating to the aforementioned

---

[1] We note the obvious however. If a retaining lien is recognized at common law (without being contracted for), it is a fortiori valid when agreed to; on the other hand, since we here hold this consensual lien invalid, it follows that it does not exist at common law in California.

claims or rights, on any sum recovered by way of settlement, and on any judgment that may be recovered thereon, for the fees hereinbefore mentioned and it is further agreed that Counsel shall have all general, possessory, or retaining liens, and all special or charging liens known to the common law."

"11. Client may elect, upon thirty (30) days notice to Counsel by ordinary mail to Counsel's then address, to terminate this Retainer Agreement, and upon such termination all accrued Counsel fees and costs hereunder payable to Counsel shall become immediately due and payable by Client. Counsel shall have a retaining lien on all files, papers, and documents in its possession to secure payment of all sums owed to it hereunder, and shall not be obligated to release the same to Client or to substitute Counsel unless and until all such fees and costs have been paid."

The focal issue therefore is whether there is some rule of law, equity, or public policy which renders this consensually created possessory lien invalid and unenforceable. (See 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, §§ 372, 373.)

It is important that we clearly define the subject matter of the lien in question. The petition alleges and it is undisputed[2] that Damir has in his possession copies of all the documents in the superior court litigation file (Sacramento County No. 211535), itself consisting of three full manila folders, and which includes lengthy pleadings (including a 101-page third amended complaint), points and authorities, interrogatories and answers thereto, 38 depositions, and other similar papers. In addition, Damir's file contains extensive notes, papers, memoranda, and communications collected during five years of representation.[3] Notably there is nothing of any pecuniary value, nothing which could be sold to a third person for any sum of money to be applied against the disputed claim for unpaid fees, should the dispute be ultimately resolved favorably to Damir.[4]

---

[2]The petition alleges the contents of Damir's files on information and belief; the answer denies these allegations, as well as the allegations relating to the contents of the superior court file for lack of information and belief (Code Civ. Proc., § 431.20). Such a denial being improper (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 888, p. 2483), we accept the truth of the complaint's allegations. Moreover, we judicially notice that a lawyer's litigation file normally contains the sort of documents described in the petition (Evid. Code, § 451, subd. (f)).

[3]Hereinafter the contents of the Damir files will be referred to as "papers."

[4]Our holding is limited to the facts of this case. As to a case where the subject matter of the contractual retaining lien is something of pecuniary value, we express no opinion.

Thus the papers are of no direct benefit to Damir in his quest for unpaid fees. Should petitioner abandon the lawsuit or proceed to trial without the papers, their presence in Damir's hands is meaningless to him. Their sole benefit to Damir is the coercive effect they will have upon petitioner; because to petitioner, the papers are of substantial value, both tangible and intangible. Intangibly, they are of presumed inestimable value in the preparation and trial of the case. Tangibly, their value is two-fold. First, despite the fact that modern technology has made photographic duplication relatively inexpensive, the cost of duplicating the great quantity of material in the county clerk's file is not trivial; thus there is a serious actual, tangible, and immediate dollar consideration to petitioner. Second, materials in Damir's file which are not available in the court file may be indispensible to petitioner's ultimate success in the litigation; thus there is an extreme potential dollar benefit to petitioner which is lost if the papers are not surrendered.

Therefore Damir is in the untenable position of insisting upon the exercise of his contractual right to damage his client's cause (the same cause which he hitherto espoused and which generated fees to him, both disputed and undisputed), unless the client pays him the disputed fees in full and foregoes his right to honestly litigate the dispute. The client's cause, sacred as it is to a member of the legal profession, may not be so abused.

Rule 2-111 (A)(2) of the Rules of Professional Conduct of the State Bar of California (1975 Amendments) states: "(2) . . . a member of the State Bar shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to this client, allowing time for employment of other counsel, *delivering to the client all papers and property to which the client is entitled,* and complying with applicable laws and rules." (Italics added.)

This rule is identical to Disciplinary Rule DR 2-110(2) of the Code of Professional Responsibility of the American Bar Association, and is expanded in Ethical Consideration EC 2-32: "A lawyer should not withdraw without . . . endeavoring to minimize the possible adverse effect on the rights of his client and the possibility of prejudice to his client . . . ."

Although these rules relate to withdrawal, they apply with no less force to the discharge of an attorney. His duty to the client is not altered

by the circumstance of who terminates the relationship. Even in jurisdictions recognizing retaining liens, lawyers run the risk of disbarment if their assertion of such lien is deemed in bad faith. (See, e.g. *People* v. *Radinsky* (1973) 182 Colo. 259 [512 P.2d 627, 628]: "an attorney's lien which misstates facts and is utilized to overreach and to force payment of more than is owed cannot be tolerated.")

In *Hulland* v. *State Bar, supra,* 8 Cal.3d at page 448, the Supreme Court said "When an attorney, in his zeal to insure the collection of his fee, assumes a position inimical to the interests of his client, he violates his duty of fidelity to his client. (*Hinds* v. *State Bar* (1941) 19 Cal.2d 87 [119 P.2d 134]; see *McGrath* v. *State Bar* (1943) 21 Cal.2d 737, 741 [135 P.2d 1]; *Lindenbaum* v. *State Bar* (1945) 26 Cal.2d 565, 573 [160 P.2d 9].) Petitioner's wilful failure to render the service for which he was retained and his assumption of a position contrary to his client's interests clearly warrant public reproval."

The distinction between this case and *Hulland* is, of course, that here Damir seeks to collect a disputed fee from a *former* client who has discharged him. But unlike an independent action brought by the attorney for alleged fees, a retaining lien of the type involved here directly prevents the client from properly pursuing the already initiated action with an attorney of his choice, and thus violates the spirit of the *Hulland* rule. (See *Fracasse* v. *Brent* (1972) 6 Cal.3d 784 [100 Cal.Rptr. 385, 494 P.2d 9].)

To enforce the lien in question here would be to condone a violation of the foregoing ethical duties owed by a lawyer to his client, contrary to the public policy of this state. ■ Contracts which violate the canons of professional ethics of an attorney may for that reason be void. (1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 475.) ■ We hold that where the subject matter of an attorney's retaining lien is of no economic value to him, but is used only to extort disputed fees from his client, the lien is void.

Let a peremptory writ of mandate issue directing the trial court to vacate its prior order and to enter an order commanding Damir to forthwith deliver to petitioner all files, documents, and papers in his possession relating to the action.

Evans, J., concurred.

**FRIEDMAN, Acting P. J.,**—I concur in the result and in most of the court's opinion. I do not agree with those portions of the opinion which imply a distinction turning on the pecuniary value of the property subjected to the attorney's claim of lien. In embracing papers and other material which the client needs for the continued protection of his interests in or out of court, the retaining lien provision is illegal because it offends important tenets of professional ethics. The tenets are violated without regard to the pecuniary value of the withheld material. I see no logical justification for the court's dicta limiting our decision to property without pecuniary worth. These dicta will stimulate confusion and litigation. They obscure the guidance which the opinion should supply the legal profession.