**In re Don E. WINNETT and Susan A. Winnett, aka Susan E. Davie, Debtors.**

**Bankruptcy No. 287–02733–C–7.**

United States Bankruptcy Court,
E.D. California.

Feb. 8, 1989.

8

, Robert S. Bardwil, Bardwil & Dahl, Sacramento, Cal., for debtors.

Richard D. Steffan, Auburn, Cal., Trustee.

Thomas C. Hughes, Kronick, Moskovitz, Tiedemann & Girard, Sacramento, Cal., for creditor Kronick, Moskovitz, Tiedemann & Girard.

## MEMORANDUM DECISION ON TRUSTEE'S MOTION TO ABANDON PROPERTY

CHRISTOPHER M. KLEIN,
Bankruptcy Judge.

 This is a motion to abandon the estate's interest in a fund held by a law firm in a trust account on the basis that it is of inconsequential value and benefit to the estate. 11 U.S.C. § 554; Bankr. Rule 6007.[1] The trustee says that either of two competing claimants are entitled to the entire fund. I conclude that one of the claimants is entitled to the fund on a basis that is superior in right to the other claimant, and, accordingly, do not reach the determination of the rights of the other claimant.

The underlying question is whether the law firm that won a fee award from its clients' adversary has a sufficient interest in the funds, which now are in the firm's trust account, to withstand turnover demands from the bankruptcy estate and from its clients. The trustee says that the debtors are entitled to any part of the sum that does not go to the law firm. I hold that the law firm has a secured claim pursuant to 11 U.S.C. § 506(a) based upon either a common law attorney's retaining lien or upon a right to setoff, which se-

---

**1.** The trustee's "request for instructions" is deemed to be a motion to abandon property, as the trustee says that the estate has no equity in the disputed property. If the trustee had continued to claim an interest, he would have been required to file an adversary proceeding. Bankr. Rule 7001. A "request for instructions" has no procedural value in modern bankruptcy practice now that the court does not participate in administration and is disfavored.

cured claim is of such a magnitude that the funds securing the claim are of inconsequential value and benefit to the estate, and that the trustee may abandon the estate's interest in the funds.

## FINDINGS OF FACT

Don and Susan Winnett engaged the law firm of Kronick, Moskovitz, Tiedemann & Girard ("Kronick firm") by written contract dated June 13, 1984, to represent them in their appeal from a decision of the California Superior Court, El Dorado County, approving a foreclosure sale of their real property near Lake Tahoe. The contract provided that the Kronick firm would be paid on an hourly basis at stated rates. At that point the Winnetts had lost the property and had paid their trial attorneys $6,458.00.

The Kronick firm turned defeat into victory on appeal, winning on an issue of first impression. *Winnett v. Roberts*, 179 Cal. App.3d 909, 225 Cal.Rptr. 82 (1986). The property was restored to the Winnetts. The promissory note in favor of the foreclosing creditor was declared fully paid and canceled. Attorney's fees were authorized by statute because the promissory note provided for attorney's fees to the foreclosing creditor.[2] Despite a request for more than $23,000.00 as fees, the superior court awarded $12,000.00 on remand as "reasonable" attorney's fees under that statute, plus $749.48 for other costs. The Kronick firm's appellate effort cost $17,984.87. During the course of the appeal, the Winnetts paid $5,990.00 to the firm. They still owed $11,994.87.[3]

The Winnetts sold the disputed property, realizing $14,000.00 in cash, plus a note for $14,000.00, in December 1986, shortly after winning the appeal. Debtors' Statement of Financial Affairs at 3.

The losing party paid the $12,749.48 in costs by check drawn to the order of the Kronick firm. Upon receiving the check, the Kronick firm paid a lien creditor $1,200.11 and deposited the remaining $11,549.37 into a client trust account. It thereupon notified the Winnetts that it had the funds in the trust account and offered to accept the funds in satisfaction of its slightly higher bill.

The Winnetts demanded the funds. The Kronick firm withdrew its offer to waive part of its fees, declared a fee dispute, offered mandatory arbitration as required by state statute, and subsequently filed suit against the Winnetts. In doing so, the Kronick firm precisely adhered to the ethical and legal requirements for handling fee disputes.

On May 8, 1987, the Winnetts assigned their rights in the funds "in consideration of, and as down payment for, the real property commonly referred to as 9349 Castlemont Circle, Orangevale, California" on May 8, 1987. Five days later they filed this bankruptcy case, scheduling their new property as exempt homestead with a value of $77,500.00 against which there was $59,589.00 in secured debt.

## CONCLUSIONS OF LAW

In arguing that the funds in the trust account are of inconsequential value and benefit to the estate, the Kronick firm asks that a constructive trust be imposed to protect its interest. The debtors say that there can be no constructive trust without palpable wrongdoing by them.

The funds are of inconsequential value and benefit to the estate on account of the rights of the Kronick firm for more straightforward reasons than those that

---

**2.** Cal.Civ.Code § 1717(a):

In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party ... prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

Reasonable attorney's fees shall be fixed by the court, and shall be an element of the costs of suit.

**3.** These sums were stipulated solely for purposes of the motion and are not final determinations of amounts.

have been urged. The Kronick firm has a secured prepetition claim because California law recognizes an attorney's retaining lien in the funds in the attorney's trust account under the circumstances of the case and, as an independent basis, because a setoff is appropriate.

The pertinent facts are: (1) the Kronick firm received funds in payment of the attorney's fee award in the litigation that the firm won for its client; (2) the firm's services were provided pursuant to a written contract calling for compensation at hourly rates; (3) there was an unpaid balance of $11,994.87 for the firm's services; (4) the funds were placed in a trust account; and (5) the firm complied in all respects with the applicable procedures for handling fee disputes.

### 1. *Attorney's Retaining Lien.*

■ California law recognizes a common law "retaining lien" in funds to secure payment of attorney's fees. Since the retaining lien is possessory, it is essential that the lienor have possession of the property. As a common law lien, it arises by implication of law rather than by express contract, but there must be a contractual relation between the parties. It is contrasted with the common law "charging lien," which is a nonpossessory lien against the judgment fund or some other fund that is not in the possession of the attorney and which is not recognized in California.[4]

California's recognition of the common law retaining lien is unambiguous, even though the California Supreme Court has not expressly ruled on its applicability in a decision. It is memorialized at Rule 8–101(A)(2) of the Rules of Professional Conduct of the State Bar of California. All funds in which the client has an interest, including funds in which both client and attorney have an interest, must be deposited in a trust account:

> ... when the right of the member of the State Bar or firm of which he is a member to receive a portion of trust funds is disputed by the client, the disputed portion *shall not be withdrawn* until the dispute is finally resolved.

Rule 8–101(A)(2) (emphasis supplied). That rule is an unmistakable restatement of the common law attorney's lien against funds.

The formal approval of that Rule of Professional Conduct by the California Supreme Court constitutes an authoritative determination that the attorney's retaining lien is viable with respect to funds that are in the possession of an attorney. 14 Cal.3d, Rule 1 (1975) (publishing Rules of Professional Conduct). In view of that rule, the supreme court's apparent 139–year silence on the question of retaining liens is not significant.[5]

---

**4.** A charging lien against proceeds of a judgment or a settlement will be imposed in California only if the parties intended that the attorney look to the fund for payment—i.e. if it is consensual. *Isrin v. Superior Court,* 63 Cal.2d 153, 45 Cal.Rptr. 320, 403 P.2d 728 (1965); *In re Pacific Far East Line, Inc.,* 654 F.2d 664 (9th Cir.1981) (construing *Isrin* ). The California Supreme Court noted in dicta in *Isrin* that the actual status of the common law charging lien remains an open question and hinted that it might be recognized. Although recognition of the charging lien under California common law would provide an independent basis for resolving this matter, such a step is appropriately left to California courts.

**5.** It can be argued that the retaining (i.e. possessory) lien really was recognized in dictum in *Ex parte Kyle,* 1 Cal. 331 (1850). Other dictum in that oft-cited case is the source of the belief that California does not recognize common law charging (i.e. nonpossessory) liens, a question that the state supreme court has said is "open"

as it criticized *Ex parte Kyle. Isrin,* 63 Cal.2d 153, 45 Cal.Rptr. 320, 403 P.2d 728; 1 B. Witkin, *California Procedure* § 143 (3d ed. 1985); *see* note 4 *supra.*

As with many old cases that are progenitors of entrenched doctrines, *Ex parte Kyle* makes interesting reading. The actual holding was that an attorney whose claim for fees was based upon *quantum meruit* could not, in the absence of a statute awarding costs to the attorney, enforce a charging lien and, instead, had to proceed "in the ordinary mode" against the client. *Ex parte Kyle* at 333. The language was so imprecise that it seemed to encompass attorney's fees based on contract (except contracts to grant a lien), thereby leading to the assumption that California does not recognize common law charging liens.

Retaining liens were mentioned in *Ex parte Kyle* but were inapplicable because the attorney did not have possession of the judgment fund. It does not appear that they were genuinely placed in doubt by the language of the holding.

In view of Rule 8–101(A)(2), it is inconceivable that the California Supreme Court, or any subordinate California court, would rule that the Kronick firm is improperly holding the funds here at issue in the requisite trust account pending resolution of the dispute with the client. If the court were to use traditional legal terms to characterize the nature of the rule's requirement that the money be held until any dispute is resolved, it would have to say that a form of retaining lien is being recognized.

California's recognition of the retaining lien may be limited to funds that come into an attorney's possession by way of a fee award, payment of a judgment, deposit on account of fees and costs, or the like. It does not extend to litigation files when a party changes counsel in midcase. *Academy of California Optometrists, Inc. v. Superior Court*, 51 Cal.App.3d 999, 124 Cal.Rptr. 668 (1975). In that case, which is the only reported California appellate decision that directly addresses a retaining lien, an attorney who was fired during on-going litigation asserted a *contractual* retaining lien in order to withhold litigation files that were needed to continue the litigation.[6] Noting that such a use of the retaining lien offended Rule 2–111(A)(2) of the Rules of Professional Conduct, the court held "that where the subject matter of an attorney's retaining lien is of no economic value to him, but is used only to extort disputed fees from his client, the lien is void." *Academy of California Optometrists, Inc.*, 51 Cal.App.3d at 1006, 124 Cal.Rptr. 668. Significantly, the court took care to limit its holding to the facts of the case and said that it was expressing no opinion about cases in which the subject matter of

the lien has pecuniary value.[7] *Academy of California Optometrists, Inc.*, 51 Cal.App. 3d at 1004 n. 4, 124 Cal.Rptr. 668.

This case is altogether different. The Rules of Professional Conduct are at one with the retaining lien. The subject matter of the lien is the essence of pecuniary value. No public policy is offended. The client is not being prejudiced in the further conduct of the litigation. If there is any overreaching, it is by the client who is trying to transform the funds into exempt property, leaving counsel to a claim against a "no asset" bankruptcy estate.

I hold that, as a matter of California law, the Kronick firm has a viable prepetition retaining lien that is a secured claim. 11 U.S.C. § 506(a). Since the claim exceeds the value of the property, *a fortiori*, it is of inconsequential value or benefit to the estate and need not be turned over. 11 U.S. C. § 542(a).

2. *Setoff.*

█ The Kronick firm also prevails on a second, independent, basis. Setoff is permitted in this type of circumstance at the discretion of the bankruptcy court. California generally recognizes setoffs. Cal. Civ.Pro. Code §§ 368 and 431.70. The determination turns upon equitable principles. 11 U.S.C. § 553; *In re Pieri*, 86 B.R. 208, 210 (9th Cir.BAP 1988).

The equities are that the Winnetts gained $28,000.00 when they sold the property that the Kronick firm recovered for them. Now they want the $11,549.37 that the loser had to pay as an attorney's fee award, leaving the Kronick firm with an unpaid $11,994.87 bill.

---

**6.** The decision did not address common law retaining liens except to note that if the contractual lien in question failed, then, *a fortiori*, a common law lien in the same property also would fail.

**7.** Here is irony. One judge disagreed with limiting the holding to liens against property that lacked economic value; he would have included all property. That judge, as fate would have it, later entered law practice with the Kronick firm and was the Winnetts' appellate counsel in the action giving rise to this dispute.

The court noted that an attorney has "a lien for his costs against money recovered by his client ... in case the money has come into the hands of the attorney," which is the Kronick firm's situation. *Ex parte Kyle* at 332. Nothing in the remainder of the opinion remotely suggests that an attorney who is actually in possession of judgment funds need hand them over. Since a common law retaining lien is passive, the claim always needs to be reduced to judgment, i.e. "in the ordinary mode." Thus, *Ex parte Kyle* is fully consistent with recognition of common law retaining liens.

The basic elements for setoff are present. The debts are in the same right, between the same parties, who are standing in the same capacity, and thereby qualify as mutual debts and claims for purposes of setoff. *In re Visiting Home Services, Inc.*, 643 F.2d 1356, 1360 (9th Cir.1981) (Bankruptcy Act); *In re Pieri*, 86 B.R. at 210; 4 *Collier on Bankruptcy* ¶¶ 553.04[1] and [2] (15th Ed.1988). The deposit of the funds into a trust account does not, under the circumstances of this case, defeat the facet of the mutuality requirement that the parties must be standing in the same capacity.[8]

The Ninth Circuit's decision in *Desser, Rau & Hoffman* does not compel a different result. There, the court held that the attorney-appellants did not have a beneficial interest in a particular fund and could not claim setoff, but, significantly, agreed that in some fiduciary situations involving attorneys, setoff would be permissible on the basis that the fiduciary also has a beneficial interest in the res. *Desser, Rau & Hoffman*, 240 F.2d at 86. Here, the Kronick firm has a beneficial interest in the funds.

The debtors' assignment of their rights in the funds as partial consideration for the purchase of exempt property makes no difference to this analysis. An assignee's rights in the funds are subject to the Kronick firm's defenses against the assignors that existed before the assignment. Cal. Civ.Pro. Code § 368; B. Witkin, Summary of California Law § 751 (8th ed. 1973).

Moreover, while California does not allow setoff against exemptions that are designed to ensure payment of daily living expenses, such as wages and unemployment or disability benefits, it does not routinely protect other exemptions. *In re Pieri*, 86 B.R. at 210–11 (and cases cited

therein). Although no California cases address the effect of the homestead exemption in the context of setoff, it is fair to predict that California courts would permit setoff in this situation.

Equitable considerations are important to the California courts. One key factor is whether the mutual debts arise out of the same transaction. Neither the Ninth Circuit's Bankruptcy Appellate Panel in *In re Pieri*, nor I, have located California cases disapproving setoff against exempt property where the mutual debts arise out of the same transaction. In addition, the debtors realized a gain that was greater than the total amount of their attorney's fees. Permitting them to appropriate to themselves the fee award at the expense of the attorneys whose efforts achieved the award would be unfair. For that reason, California courts compensate for the absence of a common law charging lien by liberally imposing constructive trusts; they would do so in this instance. *See Isrin*, 63 Cal.2d at 163, 45 Cal.Rptr. 320, 403 P.2d 728. Each of these factors tips the equitable balance in favor of permitting the setoff, even against putatively exempt property.

Finally, the Winnetts' attempt to convert the funds into exempt property by assigning their claim to their seller is not protected by the Bankruptcy Code. At first glance, section 522(c) gives them some hope because it indicates that exempt property is not liable for prepetition debts. The simple answer to this is that the only exempt property is that portion of the fund that remains after the Kronick firm's claim is paid. Moreover, it has been held in this circuit that section 522(c) gives way to a right of setoff under section 553. *In re Pieri*, 86 B.R. at 212–13.

---

**8.** Attorneys must hold funds in trust accounts if their clients have an interest, even though the attorneys themselves have an interest in the res. Cal. Rules of Professional Responsibility, Rule 8–101. When the client disputes an attorney's claim, they come into adversary conflict, and the funds *cannot* be withdrawn until the dispute is resolved. *Id.*, Rule 8–101(A)(2). None of this affects capacity for purposes of bankruptcy setoff.

An attorney who strictly complies with the applicable law and with ethical obligations by maintaining a trust account should not be deprived of a proper right of setoff in bankruptcy. *In re Pal–Playwell, Inc.*, 334 F.2d 389 (2d Cir. 1964) (Bankruptcy Act); *Desser, Rau & Hoffman v. Goggin*, 240 F.2d 84, 86 (9th Cir.1957) (by implication); 4 *Collier on Bankruptcy* ¶ 553.04[2] (15th ed. 1988).

In sum, the Kronick firm is entitled to a setoff.

3. *Further Proceedings.*

■ Although the amount of the Kronick firm's claim ·has been stipulated for purposes of this motion, I am not being asked to determine the final amount of the claim. Instead, I am determining that the interest of the estate is of such inconsequential value and benefit as to justify abandonment under section 554. 11 U.S.C. § 554.

■ The Winnetts have suggested that they may owe less than what has been claimed. That is a dispute between the Kronick firm and the Winnetts, who contend that they are entitled to receive and exempt the funds. There is a pending civil action in state court in which the Kronick firm has sued the Winnetts on its contract, which affords an efficient forum for obtaining a final determination of that issue.[9] In order to facilitate that action, I will *sua sponte* lift the automatic stay.

An appropriate order will issue.

9. For example, the Winnetts argue that the award of $12,000.00 as attorney's fees requires apportionment of a share to the attorneys who handled the trial and constitutes an adjudication of the contractual rights between the Winnetts and the Kronick firm. Those are questions of state law that the state court is equipped to resolve.