[Civ. No. 68793. Second Dist., Div. One. June 28, 1984.]

NORMAN H. KALLEN, Plaintiff and Respondent, v.
SAMUEL P. DELUG et al., Defendants and Appellants.

---

**COUNSEL**

Horvitz & Greines, Horvitz & Levy, Gordon D. Soladar, Alan G. Martin, David M. Axelrad and Barry R. Levy for Defendants and Appellants.

Katz, Friedman & Scott and Martin Z. N. Katz for Plaintiff and Respondent.

## OPINION

## SPENCER, P. J.—

### INTRODUCTION

Defendant Samuel P. Delug[1] appeals from a summary judgment entered in favor of plaintiff Norman H. Kallen on the first and second causes of action of plaintiff's second amended complaint, alleging respectively the breach of an oral contract and the breach of a written contract.

### PROCEDURAL BACKGROUND

In January 1979, plaintiff filed a complaint against defendant and others, alleging nine separate causes of action on various theories, including breach of contract, fraud and quantum meruit. Following assorted procedural rulings, defendant answered plaintiff's second amended complaint and the parties undertook discovery proceedings. Ultimately, the matter was set for trial on June 28, 1982.

On May 22, 1982, defendant moved for an order determining certain issues to be without substantial controversy (formerly a motion for partial summary judgment), the motion to be heard on June 1. After plaintiff interposed an objection on the ground the motion had been made less than 45 days before the commencement of trial, the court continued the matter to June 28, 1982, determining that it should be heard at time of trial. Thereafter, due to court congestion, the trial was continued until January 1983.

As a consequence, defendant once again moved for partial summary judgment, the motion to be heard on August 3, 1982. The trial court granted defendant's motion as to all causes of action except quantum meruit, but plaintiff moved to set aside the order granting defendant's motion on the ground of lack of notice. Consequently, the court vacated its ruling, stayed the motion and set it for reargument on August 31. Plaintiff moved for the partial adjudication of issues, the motion also to be heard on August 31. Each of these motions was based on declarations and particular documentary evidence attached thereto, as well as all records, pleadings and other papers on file in the instant action. After hearing the respective motions, the trial court granted plaintiff's motion and denied defendant's. Subsequently, on October 5, 1982, plaintiff moved for summary judgment on the first and

[1]In addition to defendant Delug, individually, an appeal has been taken by him as a professional law corporation and by Delug & Matyas as a professional law corporation and as a partnership.

second causes of action. The trial court granted the motion, after which judgment was entered accordingly. Plaintiff dismissed the remaining causes of action without prejudice.

## STATEMENT OF FACTS

The evidentiary papers on file in the underlying motions at issue herein include the declaration of defendant, the declaration of defendant's attorneys Laurence Strick and Gordon D. Soladar, plaintiff's declaration, authenticated copies of retainer agreements and a substitution of attorney signed by Marna Balin, the transcript of defendant's deposition testimony and a letter addressed to defendant and dated December 6, 1974, bearing plaintiff's signature and defendant's written acknowledgement. From these materials we glean the following pertinent facts.

In late 1974, defendant met with Marna Balin (Balin), who told him the circumstances of two automobile accidents she had suffered in 1972 and indicated she wished to discharge the attorney presently handling the matters; that attorney was plaintiff. Balin requested that defendant "immediately obtain the files for her case" from plaintiff. As a consequence, defendant wrote to plaintiff at least twice, requesting that he execute a substitution of attorney at the request of his client, Balin, and transmit all of Balin's files to defendant's office. Balin had signed a substitution of attorney form on November 27, 1979.

When plaintiff failed to respond to defendant's correspondence, defendant telephoned him. Plaintiff stated to defendant that "before he would execute a substitution of attorneys (*sic*) or transmit the files to [defendant] he would have to have some kind of agreement with [defendant] as far as his [plaintiff's] legal fees were concerned. He stated that he had done basically all the work that had to be done on the files, that he was now losing the files, and did not feel that was fair. Although I [defendant] reiterated to him that he had retained a lien on [Balin's] cause of action, he stated to me that he wanted a firm written agreement regarding the matter of his fees before he would execute a substitution of attorneys (*sic*) and before he would deliver the files . . . ."

Defendant told plaintiff that Balin was pressing him to obtain her files from plaintiff. He also expressed to plaintiff his view of plaintiff's ethical responsibilities "regarding withholding the files until the matter of his fees had been settled. [Defendant] told [plaintiff] that he did not have the right to withhold a client's file once the client had instructed him to give it up. Nevertheless, [plaintiff] told [defendant] that he would not execute a sub-

stitution of attorneys (*sic*) or deliver the files until we had settled the matter of [plaintiff's] fees."

On December 6, 1979, plaintiff wrote to defendant, memorializing his understanding of an acceptable fee arrangement. The letter states: "This letter is being written to confirm my understanding with respect to executing Substitution of Attorney forms concerning the [Balin] matters. I have agreed to execute the Substitution of Attorney forms under the following conditions:

"1. [I have] a lien for service rendered against any and all proceeds of any settlement, judgment or verdict which may be paid to [Balin] as a result of the above captioned matters.

"2. In consideration of executing the Substitution of Attorney forms [defendant] gives to [plaintiff] forty percent (40%) of all attorney's fees recovered by way of settlement, judgment or verdict in the [Balin] matters.

"3. Any draft or check issued by any defendant in the [Balin] matters shall include Norman H. Kallen [plaintiff] as a named payee.

"4. Samuel P. Delug [defendant] will reimburse [plaintiff] forthwith for any advances made on behalf of [Balin] with respect to the above captioned matters.

"I shall tender the files and Substitution of Attorney forms upon receipt and acknowledgement of these provisions."

Defendant's client, Balin, "was extremely anxious for me to begin working on her case and I did not feel it fair on [plaintiff's] part to compel me to seek an order of court directing him to execute a substitution of attorneys (*sic*) and/or deliver [Balin's] files to my office." Consequently, defendant felt he had no choice but to acknowledge the terms of the letter agreement. Defendant signed the letter in acknowledgement of its terms in the space provided on December 9, 1979, and returned it to plaintiff. On December 12, plaintiff executed the substitution of attorney and surrendered Balin's case files to defendant.

In contraposition to defendant's version of events, plaintiff simply stated: "I at all times negotiated openly and freely with [defendant], never in any way attempted to, or in fact intimidated, threatened, or otherwise deprived [defendant] of his willing capacity to negotiate with me; at all times during my discussion with him, we engaged in free and open dialogue and always there was a healthy give-and-take . . . ; at all times during those discussions,

[defendant] left me with the unmistakeable impression . . . that he did not perceive himself to be victimized by me . . . ."

After receiving Balin's case files from plaintiff, defendant discovered that a great deal of work remained to be done to bring the cases into a state of trial readiness. Significant gaps in the record required further conferences with Balin to clarify the factual circumstances of the cases. Defendant also became concerned about what he perceived as a conflict of interest in plaintiff's joint representation of Balin and another party. In view of the scope of the remaining preparation necessary on Balin's cases, defendant eventually associated another attorney with himself in Balin's representation. This attorney, Steven Gorman, thereafter undertook primary responsibility for preparing the cases for trial. Plaintiff repeatedly had urged Balin to settle the cases for $25,000; the cases ultimately were settled for $810,000.

Pursuant to defendant's contingency fee agreement with Balin, the total attorney's fee amounted to $324,000. In accordance with defendant's subsidiary fee-sharing agreement with Attorney Gorman, defendant's professional corporation received 50 percent of that amount, while the remainder went to Attorney Gorman. Following the settlements, plaintiff demanded 40 percent of the resulting $324,000 fee. Defendant took the position that the letter agreement was unenforceable on the ground it was contrary to public policy and refused to honor plaintiff's demand. Instead, defendant offered plaintiff a sum which defendant believed represented the reasonable value of plaintiff's services prior to his discharge. Plaintiff rejected the offer, after which he initiated the instant action.

CONTENTIONS

I

Defendant contends the trial court erroneously granted summary judgment, in that defendant's evidence establishes the fee-splitting agreement is illegal and contrary to public policy and, hence, unenforceable.

II

Defendant further contends the trial court erroneously granted summary judgment, in that defendant's evidence establishes the fee-splitting agreement was not supported by valid consideration, but was obtained by duress.

III

Finally, defendant asserts the trial court erroneously granted summary judgment, in that defendant presented evidence which raises triable issues

of material fact as to whether the agreement was induced by plaintiff's material misrepresentations as well as with respect to the amount of recovery due plaintiff if the agreement is in fact enforceable.

## DISCUSSION

█ Preliminarily, we note that in reviewing the propriety of a summary judgment, this court must resolve all doubts in favor of the party opposing the judgment. (*Wynner* v. *Buxton* (1979) 97 Cal.App.3d 166, 172 [158 Cal.Rptr. 587].) As a consequence, the declarations of the moving party must be strictly construed, while those of the opponent are liberally construed. (*Blair* v. *Pitchess* (1971) 5 Cal.3d 258, 285 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206]; *Tresemer* v. *Barke* (1978) 86 Cal.App.3d 656, 668 [150 Cal.Rptr. 384, 12 A.L.R.4th 27].) However, the opposing party "cannot rely on his pleadings, but must make an independent showing that he has 'sufficient proof of the matters alleged to raise an issuable question of fact'" if the moving party's evidence, standing alone, is sufficient to entitle him or her to judgment. (*Cullincini* v. *Deming* (1975) 53 Cal.App.3d 908, 913-914 [126 Cal.Rptr. 427].) █ Summary judgment is proper if the evidence in support of the moving party would be sufficient to sustain a judgment in his favor and the opposing party has not presented any facts which give rise to a triable issue of material fact. (Code Civ. Proc., § 437c; *Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].)

### I

█ Defendant contends the trial court erroneously granted summary judgment, in that defendant's evidence establishes the fee-splitting agreement is illegal and contrary to public policy and, hence, unenforceable. We agree.

█ In substance, defendant argues the fee-splitting agreement is illegal and contrary to public policy,[2] in that plaintiff's conduct in refusing to execute a substitution of attorney and withholding the client's files was (1) designed and intended to—and did in fact—extort or coerce defendant's acquiescence in the agreement and (2) violates rule 2-108(A) of the

---

[2]Since an illegal contract is void and public policy considerations are involved, illegality need not be pleaded in the answer or even argued to preserve the issue on appeal, so long as the illegality is apparent on the face of the contract or evidence presented to prove the contract discloses the illegality. (*Lewis & Queen* v. *N. M. Ball Sons* (1957) 48 Cal.2d 141, 147 [308 P.2d 713]; *Fewel & Dawes, Inc.* v. *Pratt* (1941) 17 Cal.2d 85, 92 [109 P.2d 650]; *Santoro* v. *Carbone* (1972) 22 Cal.App.3d 721, 732 [99 Cal.Rptr. 488].) In any event, a simple denial of the agreement may suffice to enable the defendant to offer proof on the issue. (*Fewel & Dawes, Inc.* v. *Pratt, supra,* 17 Cal.2d 85, 92.)

California Rules of Professional Conduct. At this juncture, that plaintiff did indeed refuse to execute a substitution of attorney and withheld from plaintiff the client Balin's files must be treated as given.

 Defendant presented evidence that plaintiff repeatedly ignored written requests that he execute the substitution of attorney and forward Balin's files, after which, in the course of a telephone conversation, plaintiff stated, "before he would execute a substitution of attorneys (*sic*) or transmit the files to [defendant] he would have to have some kind of agreement with me [defendant] as far as his legal fees were concerned. . . . I told [plaintiff] that Marna Balin was pressing me to obtain her files from him. . . . I told him that he did not have the right to withhold a client's file once the client had instructed him to give it up. Nevertheless, [plaintiff] told me that he would not execute a substitution of attorneys (*sic*) or deliver the files until we had settled the matter of his fees."

Plaintiff never denied this course of conduct or the substance of the conversation as related above; he presented no evidence conducive to a contrary inference. To the contrary, in his response to this appeal, plaintiff implicitly accepts the truth of these representations. Moreover, the December 6, 1974, letter which constitutes the written agreement expressly recites: "In consideration of executing the Substitution of Attorney forms [defendant] gives to [plaintiff] forty percent (40%) of all attorney's fees recovered by way of settlement, judgment or verdict in [Balin's causes of action]. . . . I shall tender the files and Substitution of Attorney forms upon receipt and acknowledgement of these provisions."

 A contract may be illegal or in contravention of public policy either in its apparent substance and purpose (*Blue Cross of Northern California* v. *Cory* (1981) 120 Cal.App.3d 723, 740 [174 Cal.Rptr. 901]) or in the consideration upon which it is based (Civ. Code, §§ 1607, 1667; *Bowyer* v. *Burgess* (1960) 54 Cal.2d 97, 100 [4 Cal.Rptr. 521, 351 P.2d 793]). Unlawful consideration is that which is: "1. Contrary to an express provision of law; [¶] 2. Contrary to the policy of express law, though not expressly prohibited; or, [¶] 3. Otherwise contrary to good morals." (Civ. Code, §§ 1607, 1667.) The concept of unlawful consideration embraces a promise to refrain from wrongful conduct directed at the promisee or a third person. (*Campbell* v. *Prater* (1948) 64 Wyo. 293 [191 P.2d 160, 166]; Rest., Contracts, § 578; see also *Grasko* v. *Los Angeles City Board of Education* (1973) 31 Cal.App.3d 290, 297 [107 Cal.Rptr. 334] [questioned in *County of Los Angeles* v. *Superior Court* (1975) 13 Cal.3d 721, 728-729 [119 Cal.Rptr. 631, 532 P.2d 495] and *City and County of San Francisco* v. *Cooper* (1975) 13 Cal.3d 898, 916-917] [120 Cal.Rptr. 707, 534 P.2d 403].) As *Campbell* noted in a different factual context, illegal consideration

encompasses such a promise because it is contrary to law or public policy for an individual who has acted wrongfully to the injury of another to exact a consideration for relinquishing such conduct. In other words, the law finds repugnant the coercion inherent in a promise which carries the implied threat that, without acquiescence in the return promise exacted, the wrongful conduct will continue. (*Campbell* v. *Prater, supra,* 191 P.2d 160, 166; see also Rest., Contracts, § 578, com. a.)[3]

Rule 2-111(A)(2) of the California Rules of Professional Conduct provides: "In any event, a member of the State Bar shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules." ■ It is settled that rules relating to the withdrawal of an attorney from employment "apply with no less force to the discharge of an attorney. His duty to his client is not altered by the circumstances of who terminates the relationship." (*Academy of California Optometrists, Inc.* v. *Superior Court* (1975) 51 Cal.App.3d 999, 1005-1006 [124 Cal.Rptr. 668].) It is a breach of the duty imposed by rule 2-111(A)(2) to retain a client's case files after discharge (*ibid*), in that an attorney's work product belongs absolutely to the client whether or not the attorney has been paid for his services (*Weiss* v. *Marcus* (1975) 51 Cal.App.3d 590, 599 [124 Cal.Rptr. 297]), or to fail to forward the client's files to a successor attorney (*Finch* v. *State Bar* (1981) 28 Cal.3d 659, 665 [170 Cal.Rptr. 629, 621 P.2d 253]).

■ It is further settled that a client has an absolute right to substitute one attorney for another for any reason, whether or not the client owes the attorney money; it is immaterial that such a substitution will work to the purported detriment of the original attorney. (*Meadow* v. *Superior Court* (1963) 59 Cal.2d 610, 616-617 [30 Cal.Rptr. 824, 381 P.2d 648]; accord, *Fracasse* v. *Brent* (1972) 6 Cal.3d 784, 790 [100 Cal.Rptr. 385, 494 P.2d 9].) Once an attorney has actually undertaken the representation of a client, negotiating with defendant and filing pleadings, the execution and filing of a substitution of attorney is essential to an effective change in representation; until the substitution is a matter of record, the successor attorney cannot act affirmatively to protect the client's interests and the original attorney retains the power to bind the client by his or her actions. Hence, a client's power to substitute one attorney for another has little meaning unless

---

[3]California has expressly recognized this principle with respect to the substance of a contract; if the sole benefit of an agreement is its extortionate effect on the promisor, the agreement is unenforceable as against public policy. (*Academy of California Optometrists, Inc.* v. *Superior court* (1975) 51 Cal.App.3d 999, 1005 [124 Cal.Rptr. 668].)

its exercise is accompanied by the original attorney's prompt execution of a substitution of attorney. The original attorney's refusal to comply works a serious hardship on the client and puts the client's interests at risk. █ As *Hulland* v. *State Bar* (1972) 8 Cal.3d 440, 448 [105 Cal.Rptr. 152, 503P.2d 608] recognized, "When an attorney, in his zeal to insure the collection of his fee, assumes a position inimical to the interests of his client, he violates his duty of fidelity to his client." The same principle must apply with equal force to a discharged attorney's duty to his former client. Accordingly, an attorney breaches his ethical duty as defined in rule 2-111(A)(2) when he uses his refusal to execute a substitution of attorney as a device to protect his fees.

█ It is clearly contrary to the public policy of this state to condone a violation of the ethical duties which an attorney owes to his client. (*Academy of California Optometrists, Inc.* v. *Superior Court, supra,* 51 Cal.App.3d 999, 1006.) In recognition of this premise, "[c]ontracts which violate the canons of professional ethics of an attorney may for that reason be void." (*Ibid.*) It defies logic to void a contract which, in its substance, involves a violation of an attorney's ethical duties (e.g., *id.*; *Hulland* v. *State Bar, supra,* 8 Cal.3d 440) but to enforce one procured by a promise to cease violating and begin performing those duties.

█ The uncontradicted evidence defendant presented in support of his motion for partial summary judgment unequivocally reveals that plaintiff obtained defendant's acquiescence in the fee-splitting agreement precisely by that means. The letter agreement reveals on its face that execution of the substitution of attorney and relinquishment of Balin's files was the sole consideration plaintiff offered for defendant's agreement to split fees.[4] Inasmuch as the instant contract was procured by plaintiff's promise to refrain from the further violation of his ethical duties, it is repugnant to the law within the meaning of subdivision 2 of Civil Code section 1667. Since the consideration therefore is unlawful, the entire contract is void. (Civ. Code, § 1608.)

█ In conclusion, we note that whether a contract is illegal or contrary to public policy is a question of law to be determined from the circumstances of each particular case. (*Russell* v. *Soldinger* (1976) 59 Cal.App.3d 633, 642 [131 Cal.Rptr. 145].) █ There is no controversy as to the circumstances of the instant case. Not only are the facts as defendant recites them uncontradicted, but plaintiff lends support by his implicit admission of their

---

[4]Defendant's agreement cannot be based on any other consideration, in that the services plaintiff previously performed for Balin plainly are inadequate as consideration for the new promise extracted from defendant. (*Simmons* v. *Cal. Institute of Technology* (1949) 34 Cal.2d 264, 272 [209 P.2d 581].)

accuracy. Accordingly, it was error not only for the trial court to grant plaintiff's motion for summary judgment on the first and second causes of action (breach of oral and written contract) of the second amended complaint, but also to deny defendant summary judgment on the same causes of action. In view of the conclusion we have reached, we find it unnecessary to address defendant's remaining contentions.

The judgment is reversed and the trial court is directed to enter a new and different judgment in favor of defendant on the first and second causes of action and to vacate the dismissal of the remaining causes of action.

Lillie, J., and Dalsimer, J., concurred.