**Philip A. DeMASSA, Robert Kent Lahodny, Robert Marceron, and Marie D. Carlile and Sonny Barger, Plaintiffs/Appellants/Cross-Appellees,**

v.

**Peter NUNEZ, Stephen W. Peterson, Ronald Dulisse, John Rafenstein, James Conklin, Carl Oroz, Lawrence McKinney, Norman Catalano, Paul Duvall, David McGregor, and Diogenes K. Galanos, Defendants/Appellees/Cross-Appellants.**

Nos. 83–6271, 83–6363 and 83–6470.

United States Court of Appeals, Ninth Circuit.

Petition for Rehearing Filed Dec. 6, 1984.

Decided Sept. 13, 1985.

Law Offices of Barry Tarlow, Barry Tarlow, Thomas V. Johnston, Los Angeles, Cal., for Marceron, Carlile & Barger.

Sheldon Sherman, Pancer & Sherman, San Diego, Cal., amicus curiae for Guerra, Johnson, Otero, Davis, III, Thallas & other clients of Philip DeMassa.

O. Donnell & Gordon, Jeffrey S. Gordon, Josephine E. Powe, Jan B. Norman, Los

Angeles, Cal., for Nat'l Asso. of Criminal Defense Lawyers, et al.

Peter K. Nunez, U.S. Atty., John R. Neece, Bruce R. Castetter, Roger W. Haines, Jr., Herbert B. Hoffman, Asst. U.S. Attys., San Diego, Cal., for defendants/appellees.

Before ANDERSON, TANG and FERGUSON, Circuit Judges.

PER CURIAM:

Appellant Philip A. DeMassa's petition for rehearing from this court's decision in *DeMassa v. Nunez*, 747 F.2d 1283 (9th Cir. 1984), is denied.

■ The petition for rehearing as to appellants Robert Kent Lahodny, Robert Marceron, Marie D. Carlile and Sonny Barger is granted and the cause is remanded to the district court to determine whether these plaintiffs are entitled to relief to vindicate personal rights separable and apart from the rights of Philip A. DeMassa. The district court erred by failing to recognize that these plaintiffs had rights apart from the Fourth Amendment rights of plaintiff DeMassa. "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *United States v. Nadler*, 698 F.2d 995, 998 (9th Cir.1983) (quoting *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 966–67, 22 L.Ed.2d 176 (1969)). The district court effectively granted these plaintiffs partial relief by enjoining the government search while denying them relief in the form of a return of property without recognizing the legal basis for the disposition of their Fourth Amendment claims. These clients, who are strangers to any potential indictments may appeal this error in the district court's decision to grant the injunction. *See DiBella v. United States*, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962).

I.

■ We hold that clients of an attorney maintain a legitimate expectation of privacy in their client files.

These clients' right to seek relief depends on whether the expectation of privacy in their attorney's files involving their personal legal matters "is the kind of expectation that 'society is prepared to recognize as "reasonable."'" *Hudson v. Palmer*, —— U.S. ——, 104 S.Ct. 3194, 3199, 82 L.Ed.2d 393 (1984) (quoting *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring)). *See also New Jersey v. TLO*, —— U.S. ——, 105 S.Ct. 733, 742, 83 L.Ed.2d 720 (1985). In *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the Supreme Court held: "Legitimation of expections of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." 439 U.S. at 144 n. 12, 99 S.Ct. at 431 n. 12. The clients have such a source in federal and state statutes, in codes of professional responsibility, under common law, and in the United States Constitution.

It is axiomatic that the attorney-client privilege confers upon the *client* an expectation of privacy in his or her confidential communications with the attorney. Neither the State of California, where the search took place, Congress nor the federal courts dispute this hornbook rule. *See, e.g., Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981); *Darrow v. Gunn*, 594 F.2d 767, 774–75 (9th Cir.), *cert. denied*, 444 U.S. 849, 100 S.Ct. 99, 62 L.Ed.2d 64 (1979); *United States v. Landof*, 591 F.2d 36, 38 (9th Cir.1978) (citing 8 Wigmore, *Evidence*, § 2292 (McNaughton Rev.1961)); *United States v. Friedman*, 445 F.2d 1076, 1085 (9th Cir.), *cert. denied* 404 U.S. 958, 92 S.Ct. 326, 30 L.Ed.2d 275 (1971); Cal.Evid. Code §§ 952, 954; Fed.R.Evid. 501 (incorporating common law principles of privilege). In fact, courts and legislatures explicitly espouse this axiom. *Klitzman, Klitzman*

& Gallagher v. Krut, 744 F.2d 955, 960–61 (3d Cir.1984) (citing Model Rules of Professional Conduct Rule 1.6 (1983) and Model Code of Professional Responsibility DR 4–101 (1980)); *United States v. Medows,* 540 F.Supp. 490, 499 n. 35 (S.D.N.Y.1982) ("Of course, the Court recognizes that [the lawyer's] clients have an interest in the privacy of their files."); *Law Offices of Bernard D. Morley v. MacFarlane,* 647 P.2d 1215, 1222 (Colo.1982) ("there is an enhanced privacy interest underlying the attorney-client relationship which warrants a heightened degree of judicial protection and supervision when law offices are the subject of a search for client files or documents"); Privacy Protection Act, 42 U.S.C. §§ 2000aa–11(a)(3) (the Attorney General must recognize "special concern for privacy interests in cases in which a search or seizure for such documents could intrude upon a known confidential relationship such as that which may exist between ... lawyer and client").

Constitutional guarantees also support the legitimacy of the clients' expectation of privacy in this case. To the extent that the right to effective assistance of counsel in a separate criminal case is at stake, the Sixth Amendment provides an additional "source" and "understanding" of this expectation of privacy. *See, e.g., United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 2044, 80 L.Ed.2d 657 (1984) (right to counsel necessarily encompasses the right to effective assistance of counsel); *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (Sixth Amendment right to counsel is fundamental to our adversary system of criminal justice). Because the Fifth Amendment's protection against testimonial self-incrimination may be threatened by the act of disclosure of legal files, that constitutional guarantee also supports the clients' legitimate expectations of privacy. *See United States v. Terry,* 759 F.2d 1418, 1420 (9th Cir.1985) ("an attorney's production could implicate client in compelled testimonial incrimination") (citing *In*

re Grand Jury Subpoena Duces Tecum, 754 F.2d 918, 920 (11th Cir.1985)).

The expectation of privacy in an attorney's client files thus has roots in federal and state statutory and common law and in the United States Constitution, among other sources. Indeed, there is no body of law or recognized source of professional ethics in which this "source" or "understanding" is lacking.

II.

The government's arguments to the contrary are invalid. The government insists that the thing in which the clients must have an expectation of privacy sufficient to challenge the search is the entire law office —"the premises." Finding no such expectation, they conclude that appellants may not challenge the search. DeMassa's clients do not, however, seek the return of DeMassa's premises. They seek the return of their personal client files and they seek to preserve the integrity of those files by enjoining any further search. Thus, the only thing in which they assert a legitimate expectation of privacy are the files themselves.

The government then claims, without citation, that these appellants had no possessory or ownership interest in their files. Aside from the doubtful validity of this proposition (*see Kallen v. Delug,* 157 Cal.App.3d 940, 951, 203 Cal.Rptr. 879, 885 (1984) (under California law, the client's legal files belong to the client and not to the attorney)); Model Rules of Professional Conduct Rule 1.6 (the client controls the release of information from his files)), it is clear that neither ownership nor possession is a necessary or sufficient determinant of the legitimacy of one's expectation of privacy. *See Rawlings v. Kentucky,* 448 U.S. 98, 105–06, 100 S.Ct. 2556, 2561–62, 65 L.Ed.2d 633 (1980); *United States v. Salvucci,* 448 U.S. 83, 91, 100 S.Ct. 2547, 2552, 65 L.Ed.2d 619 (1980).

Finally, the government claims that *United States v. Rogers,* 751 F.2d 1074 (9th Cir.1985), precludes Fourth Amendment remedies when the government violates a

legitimate expectation of privacy. *Rogers* says no such thing. *Rogers'* holding was based on the ethical duty of confidentiality alone. It merely held that dismissal of the indictment was inappropriate on the facts presented, including the fact that: "[w]e must emphasize at the outset that this is not a case in which the defendant's sixth amendment right to counsel is involved." At 1077. That holding is inapplicable here. DeMassa's clients, unlike Rogers, raise no claim that any indictments should be dismissed. DeMassa's clients, unlike Rogers, may have had their right to counsel in a criminal case implicated by the search. *Rogers'* holding, like the government's other claims, is therefore irrelevant to this case; *Rogers'* dicta, however, which recognizes the need to remedy—and to review—Fourth Amendment violations, is entirely relevant.

### III.

We therefore hold that an attorney's clients have a legitimate expectation of privacy in their client files. The district court erred in failing to recognize this expectation and in failing to decide whether any of these clients' rights were violated by the search. Thus, the case is remanded to the district court to determine whether the clients' legitimate expectation of privacy was violated. This entails two factual inquiries regarding each client: (1) in what items does he or she assert a legitimate expectation of privacy; and (2) as to each such item, did a Fourth Amendment violation occur (i.e., does the item fall within the scope of the warrant).

REMANDED.

TANG, Circuit Judge, concurring:

I concur in the denial of DeMassa's petition for rehearing and in the decision to grant the clients' petition and remand the case to the district court. I write separately because I do not believe it has been established that this court has appellate jurisdiction to make a determination on the merits of the clients' appeal. Under the rule of *DiBella v. United States*, 369 U.S.

121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962), an order denying a motion for return of property is not immediately appealable unless (1) it is solely seeking the return of property; *and* (2) it is in no way tied to a criminal prosecution *in esse* against the movant. *Id.* at 131–32, 82 S.Ct. at 660. DeMassa's clients fulfill the second part of the *DiBella* test because there is no criminal proceeding pending against them. But it is not clear that they pass the first prong of the test. The district court should determine whether the clients' motion is solely for the return of their property and does not involve a strategy of doing for DeMassa what *DiBella* prevents his doing for himself.

On remand the district court should determine not only the clients' legitimate expectation of privacy in their files but also whether they are solely seeking the return of property.