Filed 1/23/20

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JOHN HANCE et al., | F075852 |
| Plaintiffs, | (Super. Ct. No. 673904) |
| v. | |
| SUPER STORE INDUSTRIES, | **OPINION** |
| Defendant; | |
| LAW OFFICES OF SCOTT A. MILLER, | |
| Objector and Appellant; | |
| LAW OFFICES OF STEVEN D. WAISBREN, | |
| Claimant and Respondent. | |

APPEAL from an order of the Superior Court of Stanislaus County. John D. Freeland, Judge.

Law Offices of Scott A. Miller, Scott A. Miller, Bonnie Fong; Esner, Chang & Boyer, Stuart B. Esner and Joseph S. Persoff for Objector and Appellant.

Law Offices of Steven D. Waisbren and Steven D. Waisbren for Claimant and Respondent.

Littler Mendelson, George J. Tichy II, Michelle R. Barrett and Lisa Lin Garcia for Defendant Super Store Industries.

-ooOoo-

The attorneys who represented the plaintiff class in a class action moved the trial court for approval of a settlement of the action; they also moved for an award of attorney fees and a division of the award among cocounsel. The division of fees between two of the attorneys was disputed, one seeking compensation in accordance with an alleged written agreement for the division of the fees and the other contending the purported agreement was unenforceable. The trial court made an award of attorney fees and divided the fees in accordance with the alleged fee division agreement. Appellant challenges the enforceability of that agreement and the division of the attorney fee award between himself and respondent. We reverse and remand for a redetermination of the division of the attorney fee award between appellant and respondent.

## FACTUAL AND PROCEDURAL BACKGROUND

In January 2012, attorney William Margolin referred client John Hance to Steven D. Waisbren, an experienced labor law attorney, to potentially represent Hance in an action against his employer, defendant Super Store Industries, based on wage and hour claims. Waisbren[1] discussed the matter with Hance and concluded it had the potential to become a class action. Waisbren had limited experience with class actions, so he brought in attorneys Scott A. Miller and Bonnie Fong, because he believed Miller[2] was qualified to handle a class action. A second class representative, Joseph Ribeiro, was added. Hance and Ribeiro signed representation agreements drafted by the three attorneys, in which they retained the attorneys to represent them in a potential class action against defendant. The representation agreements provided that attorney fees under the agreements would be shared among the attorneys according to agreements among them. Hance's representation agreement additionally stated that Margolin would be paid a

---

[1]     "Waisbren" refers to both Steven D. Waisbren and Law Offices of Steven D. Waisbren.

[2]     "Miller" refers to both Scott A. Miller and Law Offices of Scott A. Miller.

referral fee of 15 to 25 percent of the total attorney fees awarded; that provision was omitted from Ribeiro's agreement.

From January to September 2012, Waisbren performed work on the case, along with Miller and Fong. On September 24, 2012, after negotiations among the attorneys, Fong, with the approval of Miller, sent an email to Waisbren outlining three options for a fee division agreement. On September 27, 2012, Miller and Waisbren met to discuss the proposals; on the same date, Fong sent an email to Waisbren to "confirm our tentative agreement." Under its terms, Waisbren was to receive a 30 percent referral fee, Miller was to pay Margolin's 15 percent referral fee, and Miller was to handle the case and pay the costs from that point forward. On October 1, 2012, Waisbren emailed back that the September 27, 2012 proposal was "fine." Miller, Fong, and Kelly Ann Buschman, an additional attorney brought in by Miller, then performed the work on the case. Waisbren remained as an attorney of record and monitored the progress of the case.

In 2014, Mike Helfgott was added as a third class representative. His representation agreement did not mention Waisbren, Fong, or Margolin. Miller initially failed to inform Helfgott that Waisbren was also an attorney of record on the case and failed to inform Waisbren that Helfgott had been added as a class representative.

In 2016, the parties reached a settlement agreement in the class action. In March 2017, Miller and Fong, on behalf of the plaintiff class, moved for final approval of the settlement. At the same time, they moved for an award of attorney fees, and a division of those fees among the attorneys for the class.[3]

In 2015, a dispute had arisen between Miller and Waisbren regarding the share of the attorney fee award to which Waisbren was entitled. Waisbren filed his own motion for approval of division of the attorney fees. He contended the agreement reflected in the

---

[3]     Fong had her own law practice; she was not employed by Miller but had worked with him as an independent contractor in the past. She agreed to participate in the representation of the plaintiff class but did not make a separate claim for a share of the attorney fees.

September 27 and October 1, 2012 emails constituted a binding agreement that Waisbren was entitled to receive 30 percent of the award. In support, he presented copies of the emails he contended reflected the agreement, and copies of three forms, signed by the three class representatives, in which the class representatives consented to the attorneys' fee division agreement.

Miller contended the purported fee division agreement with Waisbren was unenforceable for a variety of reasons, including: (1) there was never a final agreement to terms because Waisbren did not clearly accept all terms of the September 27, 2012 proposal; (2) any agreement for division of fees among the attorneys required the written consent of all the clients (Rules Prof. Conduct, former rule 2-200)[4] and, while Waisbren initially obtained a written consent from each class representative, Helfgott subsequently retracted his consent; and (3) if the fee division agreement was valid, it was rendered invalid by Waisbren's breach. Miller also contended the consents to the fee division agreement, which Waisbren obtained from the clients, were invalid because Waisbren failed to advise the clients that he lacked professional liability insurance, in violation of former rule 3-410.[5]

On June 2, 2017, the trial court entered an order granting final approval of the settlement of the class action. It awarded $4,300,000 as attorney fees to class counsel. In a separate June 2, 2017 order determining the division of class counsel's attorney fees, the trial court ordered that 5 percent of the attorney fees ($215,000) be awarded to Buschman, 15 percent ($645,000) be awarded to Margolin, 30 percent ($1,290,000) be awarded to Waisbren, and the remaining 50 percent ($2,150,000) be awarded to Miller.

---

[4] Former rule 2-200 was in effect at the time counsel allegedly entered into the fee division agreement. Rule 1.5.1, with similar content, went into effect on November 1, 2018. Further undesignated references to rules or former rules are to the State Bar Rules of Professional Conduct.

[5] Former rule 3-410 was in effect in early 2012, when Hance was referred to Waisbren and retained him as counsel. Rule 1.4.2, with similar content, went into effect on November 1, 2018.

4.

The trial court was convinced by a preponderance of the evidence that Miller and Waisbren agreed in October 2012 to allocate 30 percent of the awarded attorney fees to Waisbren. Its order gave effect to that agreement. Miller appeals from the order dividing the attorney fees among counsel.

## DISCUSSION

### I. Standard of Review

"An appellate court reviews an award of attorneys' fees in the settlement of a class action under an abuse of discretion standard." (*7-Eleven Owners for Fair Franchising v. Southland Corp.* (2000) 85 Cal.App.4th 1135, 1164.) Discretion must be exercised in accordance with the applicable law; if the trial court's decision falls outside the permissible range of options set by the applicable legal criteria, it has abused its discretion. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 957.) "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Hariguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712, fn. omitted.) When the facts are not in dispute, application of a statute or rule to those facts is reviewed de novo. (*Harustak v. Wilkins* (2000) 84 Cal.App.4th 208, 212.)

### II. Fee Division Agreement

In the trial court, as well as in this court, the attorneys argued at length regarding whether there was a lack of compliance with former rule 2-200 that rendered the attorneys' fee division agreement unenforceable. Former rule 2-200 provided:

> "(A) A member [of the California State Bar] shall not divide a fee for legal services with a lawyer who is not a partner of, associate of, or shareholder with the member unless:

5.

"(1) The client has consented in writing thereto after a full disclosure has been made in writing that a division of fees will be made and the terms of such division; and

"(2) The total fee charged by all lawyers is not increased solely by reason of the provision for division of fees and is not unconscionable as that term is defined in rule 4-200."

The attorneys disputed whether a final fee division agreement had been reached, whether Helfgott's retraction of his consent invalidated compliance with former rule 2-200, and whether Waisbren breached the agreement and thereby invalidated it. We need not address these complex issues, however, because even if the fee division agreement was not made unenforceable on any of these grounds, we conclude it was unenforceable because of Waisbren's failure to comply with former rule 3-410.

A.     Violation of Rules of Professional Conduct

Former rule 3-410 provided, in pertinent part:

"(A) A member [of the California State Bar] who knows or should know that he or she does not have professional liability insurance shall inform a client in writing, at the time of the client's engagement of the member, that the member does not have professional liability insurance whenever it is reasonably foreseeable that the total amount of the member's legal representation of the client in the matter will exceed four hours.

"(B) If a member does not provide the notice required under paragraph (A) at the time of a client's engagement of the member, and the member subsequently knows or should know that he or she no longer has professional liability insurance during the representation of the client, the member shall inform the client in writing within thirty days of the date that the member knows or should know that he or she no longer has professional liability insurance."

The apparent intent of the rule was to require the attorney to disclose the lack of professional liability insurance to the client, at the time the client retained the attorney, so the client could consider that information in making the decision to retain or not retain the attorney. The disclosure would enable the client to make an informed decision whether to engage an attorney who did not carry insurance that would protect the client in

6.

the event of the attorney's negligent or other wrongful conduct that might have an adverse effect on the client's case.

The rule does not specify the consequences of noncompliance. We have found no case addressing the consequences of a failure to comply with former rule 3-410. In cases involving violations of other provisions of the Rules of Professional Conduct, however, courts have determined a violation of the rules in the formation of a contract can render the contract unenforceable.

In *Kallen v. Delug* (1984) 157 Cal.App.3d 940 (*Kallen*), the client sought to retain the defendant as her attorney, to replace the plaintiff, in ongoing litigation. The plaintiff refused to sign a substitution of attorney or transfer the client's case files to the defendant unless the defendant agreed to a specified fee division arrangement. (*Id*. at p. 945.) Feeling he had no choice, the defendant signed the letter acknowledging the plaintiff's terms. (*Id*. at p. 946.) The client's litigation was later settled, and the plaintiff demanded his share of the attorney fees. The defendant contended the letter agreement was unenforceable as contrary to public policy. The plaintiff sued to enforce the agreement. (*Id*. at p. 947.)

The court reversed summary judgment in the plaintiff's favor, concluding the fee division agreement was illegal, contrary to public policy, and therefore unenforceable. (*Kallen*, *supra*, 157 Cal.App.3d at p. 948.) Former rule 2-111(A)(2), which was then in effect, provided that an attorney "shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including … delivering to the client all papers and property to which the client is entitled." (*Kallen*, at p. 950.) The rule applied equally when an attorney was discharged. (*Ibid*.) Consequently, it was a breach of the plaintiff's duties under former rule 2-111(A)(2) to retain the client's case file after discharge. (*Kallen*, at p. 950.) It was also a breach of his duties under that rule for the plaintiff to use his refusal to execute a substitution of attorney as a device to protect his fees. (*Id*. at pp. 950–951.) The court concluded: "It is

7.

clearly contrary to the public policy of this state to condone a violation of the ethical duties which an attorney owes to his client. [Citation.] In recognition of this premise, '[contracts] which violate the canons of professional ethics of an attorney may for that reason be void.' " (*Id*. at p. 951.)

In *Scolinos v. Kolts* (1995) 37 Cal.App.4th 635 (*Scolinos*), the plaintiff, an attorney, referred a client to defendants, also attorneys, who orally agreed to pay the plaintiff a referral fee of one-third of the attorney fees the defendants received in the client's case. The defendants settled the client's action, and the plaintiff sued to recover his referral fee. (*Id* at p. 637.) The trial court granted summary judgment in favor of the defendants, finding the fee division agreement did not comply with former rule 2-108 (a predecessor of former rule 2-200) because the alleged referral agreement was made without disclosure to, or the written consent of, the client; therefore, it was void as against public policy. (*Scolinos*, at pp. 638, 639.)

The court affirmed the judgment. It noted the purpose of the Rules of Professional Conduct was " 'to protect the public and to promote respect and confidence in the legal profession.' " (*Scolinos*, *supra*, 37 Cal.App.4th at p. 639.) It agreed with *Kallen's* rationale for invalidating an agreement that violated the Rules of Professional Conduct and added: "It would be absurd if an attorney were allowed to enforce an unethical fee agreement through court action, even though the attorney potentially is subject to professional discipline for entering into the agreement." (*Scolinos*, at pp. 639–640.)

In *McIntosh v. Mills* (2004) 121 Cal.App.4th 333 (*McIntosh*), the plaintiff, a former bank employee, negotiated to assist the defendant, an attorney, in litigation against the bank. (*Id*. at pp. 338–339.) Through his attorney, the plaintiff reached an agreement with the defendant by which the plaintiff was to be paid 15 percent of any attorney fees recovered in the cases against the bank in which he assisted. (*Id*. at pp. 339–340, 343.) Two actions were settled, and the defendant received more than $21 million in attorney fees. (*Id*. at p. 337.) The plaintiff sued the defendant for breach

of the fee splitting agreement. (*Ibid*.) The trial court granted the defendant's motion for summary judgment on the ground the agreement was illegal and unenforceable, and the plaintiff appealed. (*Ibid*.)

The appellate court affirmed the judgment. At the relevant time, former rule 1-320(A) prohibited an attorney or law firm from directly or indirectly sharing legal fees with a nonattorney. (*McIntosh*, *supra*, 121 Cal.App.4th at p. 344.) The reasoning behind the rule was explained: " 'Prohibited fee-splitting between lawyer and layman carries with it the danger of competitive solicitation [citation]; poses the possibility of control by the lay person, interested in his own profit rather than the client's fate [citation]; facilitates the lay intermediary's tendency to select the most generous, not the most competent, attorney [citations]. [The rule's] prohibition against lay intermediaries seeks to bar both solicitation and the presence of a party demanding allegiance the lawyer owes his client.' " (*Id*. at p. 345.) The court concluded: "In light of these public interest concerns, and because there is no dispute here that the agreement at issue between McIntosh and Mills clearly violates [former] rule 1-320(A), we conclude that the doctrine of illegality applies facially to their fee-sharing agreement." (Id. at p. 346.)

In *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc*. (2018) 6 Cal.5th 59, 87 (*Sheppard*), a large law firm agreed to represent J-M Manufacturing Company, Inc. (J-M) as defendant in certain litigation; at the same time, different attorneys within the law firm were representing one of the plaintiffs in the J-M litigation, South Tahoe Public Utility District (South Tahoe), in an unrelated matter. (*Id*. at pp. 67–68, 69.) Both clients signed engagement agreements containing purported general waivers of current and future conflicts of interest. (*Id*. at pp. 68, 69.) The law firm did not disclose to either client that it also represented the other. (*Id*. at p. 70.) After discovering the simultaneous representation, South Tahoe successfully moved to disqualify the law firm from its representation of J-M in the litigation between J-M and South Tahoe. The law firm then sued J-M for its unpaid fees. (*Id*. at pp. 70–71.)

J-M contended the attorney engagement agreement was unenforceable because it violated former rule 3-310(C)(3), which prohibited an attorney, without the informed written consent of each client, from " '[r]epresent[ing] a client in a matter and at the same time in a separate matter accept[ing] as a client a person or entity whose interest in the first matter is adverse to the client in the first matter.' " (*Sheppard*, *supra*, 6 Cal.5th at p. 80.) The rule applied "even if 'the simultaneous representations may have *nothing* in common.' " (*Ibid.*) The court noted: "California courts have held that a contract or transaction involving attorneys may be declared unenforceable for violation of the Rules of Professional Conduct, the set of binding rules governing the ethical practice of law in the State of California." (*Id*. at p. 73.) It concluded the law firm's concurrent representation of the two clients violated former rule 3-310(C)(3) and rendered the engagement agreement between the law firm and J-M unenforceable. (*Sheppard*, at p. 80.) The law firm knew, when it agreed to represent J-M, that it already represented a client with conflicting interests, but failed to inform J-M of that representation; consequently, J-M's purported waiver was not an informed consent as required by the rule. (*Ibid.*) As a result, J-M's engagement agreement was unenforceable. (*Id*. at p. 81.)

Former rule 3-410(A) required that the class representatives be informed in writing, at the time of engaging Waisbren as their attorney, that he had no professional liability insurance. It was undisputed that Waisbren failed to disclose to any of the class representatives in writing that he lacked professional liability insurance. Neither the representation agreements nor the attorney fee division consent forms, which the class representatives signed, mentioned that Waisbren did not have professional liability insurance. To allow Waisbren to recover his agreed upon percentage of the attorney fee award, despite noncompliance with the requirements of the rule, would effectively condone that violation, contrary to the purpose behind the rules—"to protect the public and to promote respect and confidence in the legal profession." (Former rule 1-100(A).) It would bind the clients to an agreement they might not have entered into, or to a consent

to fee division they might not have given, if the required disclosure had been made. It would send an implicit message to attorneys that former rule 3-410 (and its successor, rule 1.4.2), despite being phrased in mandatory language and being included in the Rules of Professional Conduct that bind all members of the State Bar, lacks sufficient importance for courts to enforce compliance. "It is clearly contrary to the public policy of this state to condone a violation of the ethical duties which an attorney owes to his client." (*Kallen*, *supra*, 157 Cal.App.3d at p. 951.) Consequently, as in the cases discussed above involving attorney violations of other rules, the fee division agreement must be deemed unenforceable as in violation of public policy, to the extent it provides for a percentage recovery by Waisbren.

We reject Waisbren's argument that the attorney fee division agreement should be enforced despite the violation of former rule 3-410, because Miller colluded with him in failing to inform the class representatives of Waisbren's lack of professional liability insurance. He asserts that the omission from the retainer agreements of any disclosure of his lack of professional liability insurance was inadvertent; further, he disclosed to Miller shortly after the fee division agreement was reached that he did not carry such insurance. According to Waisbren, in January 2015, Miller indicated to him, through Miller's counsel, that Miller would rather not advise the class representatives of Waisbren's lack of insurance for fear they would seek other counsel. Waisbren seems to assert it would be inequitable to invalidate the contract on the ground of noncompliance with former rule 3-410, when Miller was equally or more responsible for the failure to comply.

In *McIntosh*, the court recognized there are some exceptions to invalidating a contract based on a violation of a rule of professional conduct. (*McIntosh*, *supra*, 121 Cal.App.4th at p. 347.) One such exception "is the in pari delicto exception. At its most fundamental level, the exception allows an illegal contract to be enforced 'so long as the party seeking its enforcement is less morally blameworthy than the party against whom the contract is being asserted, and there is no overriding public interest to be

11.

served by voiding the agreement.' " (*Ibid*.) Former rule 3-410 required an uninsured attorney to disclose to the client at the time of engagement that the attorney lacks professional liability insurance; the obligation is placed squarely on the shoulders of the uninsured attorney. Thus, Waisbren was required to make that disclosure in writing at the outset of his representation of the class representatives. He admittedly did not inform the first two class representatives of that lack in their written retainer agreements. Miller was apparently unaware of Waisbren's lack of insurance at that time, since Waisbren asserts he only told Miller months later, sometime after the fee division agreement was reached. Consequently, Miller could not have made, or failed to make, the required disclosure on behalf of Waisbren at the time Waisbren was engaged as counsel for Hance and Ribeiro. The disclosure to the clients also was not made in the consent to division of fees forms that Waisbren had each class representative sign. On these facts, we cannot say Waisbren was "less morally blameworthy" for the failure to comply with former rule 3-410 than Miller.

Further, there is an overriding public interest to be served by voiding the agreement. The purpose of the Rules of Professional Conduct is " 'to protect the public and to promote respect and confidence in the legal profession.' " (*Scolinos*, *supra*, 37 Cal.App.4th at p. 639.) Uninsured attorneys would have an incentive to fail to disclose the lack of insurance to their clients, if they were permitted to benefit from an uninformed consent to representation and fee division. Enforcing the agreement would appear to elevate the interests of the attorney above the interests of the client. It would also give the appearance of condoning a violation of the Rules of Professional Conduct, which would adversely affect the public's confidence in the commitment of the legal profession to ethical conduct by its members. Thus, the circumstances of this case do not warrant application of the in pari delicto exception.

12.

We conclude the trial court abused its discretion by enforcing the fee division agreement, when the undisputed facts showed a clear violation of former rule 3-410, which rendered the agreement unenforceable.

## B.     Quantum meruit

The cases that invalidate contracts because they violate Rules of Professional Conduct do not mandate forfeiture of all compensation for the work the attorney performed. In *Sheppard*, after concluding the law firm's engagement agreement was unenforceable because it was in violation of the Rules of Professional Conduct and contrary to public policy, the court addressed its final question: whether the law firm could receive any compensation for its services under the equitable doctrine of quantum meruit. (*Sheppard*, *supra*, 6 Cal.5th at pp. 87, 88.) Under that doctrine, attorneys are sometimes allowed " 'to recover the reasonable value of their legal services from their clients when their fee agreements are found to be invalid or unenforceable.' " (*Id*. at p. 88.) The court noted that "California law does not establish a bright-line rule barring all compensation for services performed subject to an improperly waived conflict of interest, no matter the circumstances surrounding the violation." (*Id*. at p. 89.) The court did not decide whether the law firm should recover in quantum meruit, because the trial court had not yet addressed that issue. (*Id*. at pp. 88–89.)

The court quoted section 37 of the Restatement Third of Law Governing Lawyers: " 'A lawyer engaging in clear and serious violation of duty to a client may be required to forfeit some or all of the lawyer's compensation for the matter.' " (*Sheppard*, *supra*, 6 Cal.5th at p. 89.) Although every violation of attorney conflict of interest rules is serious to some degree, the Restatement did not impose a categorical rule of forfeiture in every case; "the egregiousness of the attorney's conduct, its potential and actual effect on the client and the attorney-client relationship, and the existence of alternative remedies" were identified as factors to be considered in determining whether and to what extent forfeiture of compensation might be warranted. (*Ibid*.) These factors were relevant

13.

because forfeiture of compensation is an equitable remedy, which "derives primarily from the general principle of equity that a fiduciary's breach of trust undermines the value of his or her services. [Citations.] 'The remedy of fee forfeiture presupposes that a lawyer's clear and serious violation of a duty to a client destroys or severely impairs the client-lawyer relationship and thereby the justification of the lawyer's claim to compensation.' [Citation.] Forfeiture also serves as a deterrent to misconduct, and it avoids putting clients to the task of proving the harm stemming from the lawyer's conflict of interest when the extent of the harm may be difficult to measure." (*Id*. at pp. 89–90.)

" 'Considerations relevant to the question of forfeiture include the gravity and timing of the violation, its willfulness, its effect on the value of the lawyer's work for the client, any other threatened or actual harm to the client, and the adequacy of other remedies.' " (*Sheppard*, *supra*, 6 Cal.5th at p. 94.) The burden of proof of these factors is on the attorney or law firm seeking quantum meruit compensation. (*Ibid*.) "And before the trial court may award compensation, it must be satisfied that the award does not undermine incentives for compliance with the Rules of Professional Conduct. For this reason, at least absent exceptional circumstances, the contractual fee will not serve as an appropriate measure of quantum meruit recovery. [Citations.] Although the law firm may be entitled to some compensation for its work, its ethical breach will ordinarily require it to relinquish some or all of the profits for which it negotiated." (*Id*. at p. 95.)

A law firm or attorney seeking quantum meruit compensation after its fee agreement is invalidated due to an ethical violation may be able to show its conduct was not willful and the violation was not so severe or harmful as to reduce or eliminate the value of its services. (*Sheppard*, *supra*, 6 Cal.5th at p. 90.) It may attempt to show the remaining value of those services, and "the trial court must then exercise its discretion to fashion a remedy that awards the attorney as much, or as little, as equity warrants, while preserving incentives to scrupulously adhere to the Rules of Professional Conduct." (*Ibid*.)

14.

In *Pringle v. La Chapelle* (1999) 73 Cal.App.4th 1000, plaintiff, an attorney, was retained by a corporation, its president, and its chief executive officer, La Chapelle; the fee agreement was signed by each individual, and by La Chapelle on behalf of the corporation. (*Id*. at pp. 1002–1003.) After the corporation filed for bankruptcy, the plaintiff sued La Chapelle for her attorney fees; the jury found in her favor. (*Id*. at p. 1003.) On appeal, La Chapelle contended the fee agreement was not enforceable, because the plaintiff failed to comply with former rules 3-310 and 3-600; under those rules, when an attorney simultaneously represented a corporation and its officers, directors, or other constituents, and there was an actual or potential conflict of interest, the attorney was required to obtain a written waiver of the conflict. Additionally, consent to the dual representation on behalf of the corporation was required to be given by someone other than an individual who was also being represented. (*Pringle*, at p. 1004.) Because La Chapelle had signed the fee agreement on behalf of himself and the corporation, he contended the plaintiff failed to comply with these rules. (*Id.* at pp. 1004–1005.)

The court agreed with La Chapelle "that an attorney's breach of a rule of professional conduct may negate an attorney's claim for fees," but added that effect was not automatic. (*Pringle v. La Chapelle*, *supra*, 73 Cal.App.4th at pp. 1005–1006.) Prior case precedent suggested that, before an attorney who violated an ethical rule was required to forfeit fees, there must be a serious violation of the attorney's responsibilities, such as fraud, unfairness, violation or excess of authority, or acts of impropriety inconsistent with the character of the profession and the faithful discharge of duties. (*Id.* at p. 1006.) The court noted it was La Chapelle who was seeking to avoid payment of fees, not the corporation, although it was also La Chapelle who signed the fee agreement on behalf of himself and the corporation. There was no precedent for denying fees on that basis. (*Ibid*.) The court concluded the record was insufficient to determine whether

15.

the plaintiff's violation of the ethical rules was sufficiently serious to deny her compensation, and it affirmed the judgment. (*Id*. at pp. 1006–1007.)

In *Mardirossian & Associates, Inc. v. Ersoff* (2007) 153 Cal.App.4th 257, Ersoff and Leonard retained the plaintiff, a law firm, to represent them in litigation. Ersoff signed a retainer agreement that entitled the plaintiff to a contingency fee of 50 percent of the recovery in the action. (*Id*. at p. 262.) It also provided that, if the clients discharged the plaintiff, the plaintiff would be compensated according to an hourly fee schedule for the hours worked. (*Ibid*.) Ersoff and Leonard also signed consents to the dual representation. (*Ibid*.) Ersoff subsequently terminated the plaintiff's representation and replaced it with the law firm in which Ersoff's wife was a partner. Nine days later, Ersoff's case settled for $3.7 million. The plaintiff sued Ersoff for quantum meruit. (*Id*. at p. 263.)

On appeal, Ersoff argued the plaintiff simultaneously represented clients whose interests were potentially or actually in conflict, and thereby violated former rule 3-310(C) and forfeited its right to recover attorney fees. (*Mardirossian & Associates, Inc. v. Ersoff*, *supra*, 153 Cal.App.4th at pp. 277–278.) The court stated: "In certain circumstances, a violation of the Rules of Professional Conduct may result in a forfeiture of an attorney's right to fees. [Citations.] Although the breach of a rule of professional conduct may warrant a forfeiture of fees, forfeiture is not automatic but depends on the egregiousness of the violation." (*Id*. at p. 278.) The trial court concluded that, at most, there was only a potential conflict of interest between the two clients, and the plaintiff had disclosed the potential conflict to Ersoff. Ersoff's written consent, including acknowledgment that he had been advised to consult other counsel on the issue, sufficiently complied with the ethical rule. (*Ibid*.) The appellate court concluded that, even if the disclosure was not sufficiently detailed, as Ersoff claimed, Ersoff had not shown the violation was particularly egregious or he was prejudiced by it in any way. (*Id*. at p. 279.) Consequently, the trial court did not abuse its discretion by concluding it

16.

would be inequitable to excuse Ersoff's attorney fee obligation. (*Ibid*.) The court upheld the judgment awarding the plaintiff $645,440 in attorney fees. (*Id*. at pp. 268, 280.)

When the rule violation that invalidates a fee agreement or a fee division agreement is not sufficiently serious to warrant a complete forfeiture of attorney fees, allowing recovery in quantum meruit would not discourage compliance with the applicable ethical rules. (See *Huskinson & Brown v. Wolf* (2004) 32 Cal.4th 453, 460.) Attorneys "understandably prefer to receive their negotiated fees rather than the typically lesser amounts representing the reasonable value of the work performed." (*Ibid*.) Consequently, even if quantum meruit is available as a means of compensating an attorney when a fee division agreement is invalidated due to violation of ethical rules, the attorney still has ample incentive to comply with the Rules of Professional Conduct. (*Ibid*.)

As stated in *Sheppard*, "whether principles of equity entitle the law firm to some measure of compensation is a matter for the trial court to address in the first instance." (*Sheppard*, *supra*, 6 Cal.5th at p. 68.) Because the trial court found Waisbren was entitled to be compensated pursuant to the terms of the fee division agreement, it did not reach this issue. Accordingly, we must remand to allow the trial court to make that determination in the first instance.

### C. **Measure of compensation**

Miller contends that, in a class action, an award of attorney fees must be tied to the attorney's actual efforts to benefit the class, regardless of any fee division agreement. He seems to conclude that, if a quantum meruit recovery is appropriate, Waisbren's recovery of fees must be limited to the hours reflected in his time records, multiplied by a reasonable hourly rate. We do not believe the trial court is bound by such a strict rule.

*Rebney v. Wells Fargo Bank* (1990) 220 Cal.App.3d 1117,[6] addressed a written fee division agreement among counsel in a class action, in which they agreed to divide the attorney fee award on a percentage basis. (*Id*. at p. 1142.) Certain class members objected that the percentage agreement was unlawful because it allocated fees without regard to work performed, and thus gave individual attorneys an incentive not to litigate. (*Ibid*.) The court stated: "The applicable substantive law is that an award of attorney fees in class action litigation must be tied to counsel's actual efforts to benefit the class." (*Ibid*.) The authority the *Rebney* court cited for that rule, however, was a federal case, which relied on a provision of the American Bar Association Code of Professional Responsibility that prohibited an attorney "from dividing a fee with an attorney who is not a member of his firm, unless such division is made pursuant to client consent and is based upon services performed and responsibility assumed." (*In re Agent Orange Product Liability Litigation* (2d Cir. 1987) 818 F.2d 216, 217.) California, however, only had a similar rule, requiring that a fee division be based upon services performed and responsibility assumed, between 1972 and 1979. (*Chambers v. Kay* (2002) 29 Cal.4th 142, 148–149; *Moran v. Harris* (1982) 131 Cal.App.3d 913, 916.) During that time period, the effect of the provision was to prohibit referral fee agreements. (*Chambers*, at pp. 148–149.) Since 1979, however, when that language was eliminated from former rule 2-108, a predecessor of former rule 2-200, referral fees have been permitted. (*Chambers*, at p. 149.) Thus, the "applicable substantive law" cited by the *Rebney* court was a rule not in effect in California at that time or subsequently.

Even the *Rebney* court, however, recognized that quantum meruit recovery is not measured strictly by hours times hourly rate. After stating that attorney fees "must be tied to counsel's actual efforts to benefit the class," it went on: "This does not 'mean that class counsel need follow, line by line, the lodestar formula in arriving at an agreement as

_____

[6]    Disapproved on another ground in *Hernandez v. Restoration Hardware, Inc*. (2018) 4 Cal.5th 260, 269, 274, fn. 4.

18.

to fee distribution. Obviously, the needs of large class litigation may at times require class counsel, in assessing the relative value of an individual attorney's contribution, to turn to factors more subjective than a mere hourly fee analysis. It does mean that the distribution of fees must bear *some relationship to the services rendered*.' " (*Rebney v. Wells Fargo Bank*, *supra*, 220 Cal.App.3d at pp. 1142–1143; see also *Mark v. Spencer* (2008) 166 Cal.App.4th 219, 229.)

To make this rule consistent with former rule 2-200, which permitted attorney fee division agreements that included payment of a referral fee to an attorney, we must construe the attorney's "contribution" and "services rendered" to include the service of referring the matter to an attorney experienced in the field relevant to the representation or experienced as a class action attorney. (See *Barnes, Crosby, Fitzgerald & Zeman, LLP v. Ringler* (2012) 212 Cal.App.4th 172, 186 ["Clients benefit from 'referrals by "less capable lawyers to … experienced specialists" ' "].) Under this construction, in assessing the value of an attorney's services to the client or the class for quantum meruit purposes, the trial court may consider the reasonable value to the client or the class of the referral.

We note that, in the fee division agreement, all counsel agreed to a 15 percent referral fee for Margolin, who referred Hance to Waisbren and did not claim to have performed any other work on the case. Miller never disputed Margolin's entitlement to that amount, even though Margolin performed no work in the case. In his motion for approval and division of an award of attorney fees to class counsel, Miller included a request that Margolin be awarded 15 percent of the requested $4.3 million in fees, or $645,000. The court awarded Margolin that amount. This indicates Miller and the other class counsel assigned value to the referral of the case to an experienced labor law attorney.

Miller's September 27, 2012 proposed fee division agreement offered Waisbren 30 percent of the fees awarded for his referral of the case to Miller, an experienced class action attorney, for the work Waisbren had already performed on the case, and for no

further work. In this appeal, however, Miller contends Waisbren is entitled only to quantum meruit recovery, measured by the hours included in his time record multiplied by a reasonable hourly fee, or $110,295. Miller thus assigns absolutely no value to Waisbren's referral of the case to him. He advocates that Waisbren recover, for his referral and his work, only about one-sixth of the amount Margolin recovered solely for his referral. If the class benefited from Waisbren's referral of the case to Miller, that referral would appear to constitute part of Waisbren's contribution to, or services rendered in support of, the class action, the value of which should be considered in determining the amount of attorney fees to award to Waisbren.

The trial court did not reach the issues of whether Waisbren should recover compensation for his attorney services on a quantum meruit basis, despite invalidation of the fee division agreement for violation of former rule 3-410 and, if so, how much he should recover. We must remand the matter to the trial court to make those determinations.

## DISPOSITION

The June 2, 2017 order determining the division of class counsel's attorney fees is reversed, to the extent it determines the amounts Miller and Waisbren are awarded. The matter is remanded to the trial court to redetermine the appropriate division between Miller and Waisbren in accordance with the views expressed in this opinion.

The parties will bear their own costs on appeal.

_____

HILL, P.J.

WE CONCUR:


_____

LEVY, J.


_____

SMITH, J.

20.